Ex PARTE GUSTAV R. WOLF.

1.  **Liquor License:** POWER OF CITY COUNCIL.  A city council in regular session adjourned to a particular time for the purpose of considering certain remonstrances against licenses to sell intoxicating liquor.  *Held,* That the council at the adjourned session might act upon any matter proper to come before it in regular session.

2.  **City Ordinances:** CONSTRUCTION.  Where an ordinance contains a provision plainly repugnant to a former ordinance, to the extent that there is a conflict, the former ordinance is repealed by implication.

3.  ———: CLOSING SALOONS.  An ordinance of a city of the second class requiring saloons to close at ten P.M., and remain closed to five A.M. next day, is valid and within the authority conferred upon the mayor and city council.

ORIGINAL application for a writ of habeas corpus.

*J. L. Caldwell,* for the application.

1.  The pretended amendment was pretended to be passed at a special meeting of the city council, which pretended special meeting was void for want of a sufficient call and notice of the time, place, and object of said special meeting, and for want of a journal record of the submis-

sion of said call and object, and the disposition made thereof. *Dey v. Jersey City,* 19 N. J. Eq., 412. *Baltimore v. Prouty,* 25 Md., 18. 1 Dillon Corp., sec. 264. *Rex v. Hill,* 4 Barn. & Cress., 644. *Rex v. Grimshaw,* 10 Q. B., 747. *Sherwin v. Bugbee,* 16 Verm., 444.

2. Amendment is void. *Cowley v. Town of Rushville,* 60 Ind., 327. *Canton v. Nest,* 9 Ohio State, 440.

3. Council have no power to fix time for closing saloons. 1 Dillon, p. 364. Cooley Const. Lim., sec. 195. *Savannah v. Hussey,* 21 Ga., 80. *In re Burnett,* 30 Ala., 461.

*W. R. Kelly* and *A. C. Ricketts,* contra.

MAXWELL, J.

The petitioner is a licensed saloon keeper in the city of Lincoln, and alleges that he is unlawfully deprived of his liberty by the jailor of that city.

In April, 1882, the mayor and council of the city of Lincoln passed an ordinance as follows: " It shall be unlawful for any person under this ordinance, whether by himself or his clerk, to sell or give away any intoxicating, malt, spirituous, vinous, mixed, or fermented liquors to any minor under the age of twenty-one years, or to any Indian, idiot, insane person, or habitual drunkard, or to keep open, or to vend, sell, or give away any malt, spirituous, vinous, or fermented liquors in his place of business on the day of any general or special election held in said city of Lincoln, or after the hour of ten o'clock P.M., and on any day before the hour of five o'clock A.M. on the following day, or after the hour of ten o'clock P.M. on Saturday and before the hour of five o'clock A.M. of the following Monday; and every such person to whom a license shall be granted as aforesaid, shall keep his bar or place of vending such liquors in the front room nearest the principal street of the building, to be designated in such license as

the place where such vending and giving away may take place, and shall keep such bar or place of vending such liquors at all times exposed to the street, and the view thereof from the street upon which such building fronts, and also of the whole inner side of the rear wall of such room, wholly unobstructed by screens, temporary partitions, paint, frosting, curtains, or any other obstacle from such street; and shall allow or permit no gambling or gaming in any room, cabin, or sub-division of any room in or connected with the room in which said bar is kept, or in any other place, cellar, outhouse, or other place over which the person having such license shall have any control or authority; and all the conditions and regulations of this section shall be plainly written or printed in every license so granted, in addition to such as are contained in the form prescribed in section eight of this ordinance. And whosoever shall be convicted of any violation of the provisions of this section shall be fined in any sum not less than ten dollars nor more than one hundred dollars, and costs of prosecution, and stand committed to the city jail until such fine and costs shall be paid, and said section, as heretofore existing, is hereby repealed.

"Sec. 2. This ordinance shall take effect and be in force from and after its passage and publication according to law.

"Passed April 11, 1882; approved April 11, 1882.

"John Doolittle, Mayor.

"Attest: R. C. Manley, City Clerk."

The petitioner kept his saloon open later than ten o'clock P.M. and was tried and convicted of the offense, and sentenced to pay a fine of twenty-five dollars and costs and to stand committed until the same was paid. Having failed to pay the fine he was committed to jail, from which he now asks to be discharged on *habeas corpus*.

It is contended on behalf of the petitioner that the or-

dinance in question is void for want of a sufficient call signed by the mayor or any three councilmen stating the object of the special meeting at which it was passed.   The following is the record of the proceedings of the council:

"LINCOLN, NEBRASKA, April 10, 1882.

" Council met—present, Mayor Wright, Councilmen Doolittle, Grimes, Harley, Linderman, and Munson.

" Councilmen elect, Baum, Krone, and Shaberg were sworn in by the City Clerk.   Mayor Wright administered the oath of office to John Doolittle, Mayor elect.   Council adjourned, and Mayor Doolittle called the new council to order—present, Councilmen Baum, Harley, Krone, Linderman, Munson, and Shaberg.

" The matter of remonstrance of H. W. Hardy et al., against the granting of liquor licenses to H. W. Woltemade et al., came up.   Mr. Scott, for the protestants, asked further time.   Attorneys Billingsley and Kelly asked immediate consideration.   On motion Councilman Munson, Tuesday afternoon at — P.M. was set to hear the case in issue, and the clerk was instructed to issue subpœnas, etc.   *   *   *   *   *   Council adjourned."

"LINCOLN, NEBRASKA, April 11, 1882.

"Adjourned session.

"Council met—present, Mayor Doolittle, Councilmen Baum, Harley, Krone, Linderman, Munson, and Shaberg.

" On motion the reading of minutes of last meeting was dispensed with.

" Business was taken up under order of unfinished business.

" On motion Councilman Linderman, the testimony in case of remonstrances against applicants for liquor license, if testimony should be heard, was authorized to be taken by a short-hand reporter.

" On motion Councilman Munson, applications and bonds for liquor license and the remonstrances were read.

" Mr. N. S. Scott, for the committee, stated that negotia-

tions were pending looking toward a withdrawal of the remonstrance, and upon his suggestion council took a recess for a few minutes. When council came to order again the petition of H. Woltemade was taken up. L. W. Billingsley, attorney for applicants, stated that the parties in interest had agreed to a settlement on the following basis: Remonstrants withdrawing their protest, applicants agreeing to an ordinance causing saloons to be closed at ten P.M., and the removal of all curtains, screens, painted or frosted windows and doors, and all other obstructions' to view from the street.

"On motion Councilman Munson, adjourned to meet immediately in special session to consider said ordinance, and pass upon applications—ayes, Councilmen Baum, Harley, Krone, Linderman, Munson, and Shaberg.

"Adjourned.

"R. C. MANLEY, City Clerk."

"LINCOLN, NEBRASKA, April 11, 1882.

"Council met immediately in special session—present, Mayor Doolittle, Councilmen Baum, Harley, Krone, Linderman, Munson, and Shaberg, for purpose as stated above. Councilman Harley presented an ordinance, to amend section nine of an ordinance entitled "An ordinance to license and regulate the sale and giving away of any malt, spirituous, or vinous liquors in the City of Lincoln. Approved, Nov. 22, 1881.

"The ordinance was read first time.

"On motion Councilman Baum, the rules were suspended—ayes, Councilmen Baum, Harley, Krone, Linderman, Munson, and Shaberg. The ordinance was read second and third times by title, and declared passed on the vote—ayes: Councilmen Baum, Harley, Krone, Linderman, Munson, and Shaberg."

It is said that as the council adjourned on the 10th of April until the 11th, for the purpose of hearing the remonstrances against granting a license to Woltemade, and the

clerk was instructed to issue subpœnas for witnesses, and that the council thereafter adjourned, that at the adjourned meeting they were restricted to the business of hearing remonstrances. In other words, that the council having adjourned for the purpose of considering and disposing of special business, had no authority to transact any other business than such as they had designated for consideration. It is a sufficient answer to this objection to say that there was no such restriction upon the powers of the council. It is true that the record shows that it adjourned for the purpose of considering the remonstrances, but that did not limit the power of the council to take up other legitimate business. It was fixing a time for the hearing of a matter in relation to granting licenses, so that an opportunity would be given those interested therein to attend with their witnesses.

The meeting at which this adjournment was had was a regular one, and the rule as to adjournment in such cases is stated by an eminent writer thus: "A regular meeting, unless special provision is made to the contrary, may adjourn to a future fixed day; and at such meeting it will be lawful to transact any business which might have been transacted at the stated meeting, of which it is, indeed, but the continuation. Unless such be the special requirement of the charter or by-law, the adjourned regular meeting would not, it is supposed, be limited to completing particular items of business which had been actually entered upon and left unfinished at the first meeting, but might, if the adjournment was general, do any act which might have been done had no adjournment taken place." Dillon Mun. Cor., § 225, and cases cited in note 3.

That is, if a regular meeting is adjourned, any business which would have been proper for the council to consider at that meeting, may be considered and acted upon at the adjourned meeting, but if it is a special or called meeting, which is adjourned, nothing can be considered at such ad-

journed meeting unless it could have been considered and acted upon at the special meeting.

This being a regular meeting of the council, which was adjourned, it had authority to consider any matter which was proper to come before the city council. The motion to adjourn and immediately go into special session to consider an ordinance and pass upon applications was equivalent to a motion to suspend other business, and dispose of the matters embraced in the motion. Although the word adjournment was used, it was not intended to adjourn, but to remain in session and dispose of the business designated in the notice. The council was acting upon questions proper for it to consider, and the court will construe its proceedings, which have been fairly conducted and within the scope of its powers, with great liberality. The first objection is untenable.

*Second.* It is objected that the ordinance is void because it amends section eight of the same ordinance, and does not contain section eight, and is therefore in conflict with section seventy-nine of the act in relation to cities of the second class, which reads as follows: "All ordinances and resolutions, or orders for the appropriation or payment of money, shall require for their passage or adoption the concurrence of a majority of all members elected to the council or board of trustees; ordinances of a general or permanent nature shall be fully and distinctly read on three different days, unless three-fourths of the council or trustees shall dispense with the rule; ordinances shall contain no subject which shall not be clearly expressed in its title, and no ordinance or section thereof shall be revised or amended unless the new ordinance contain the entire ordinance or section as revised or amended, and the ordinance or section so amended shall be repealed."

The requirement as to repealing the section amended is substantially the same as in section eleven, article three of the state Constitution of 1875, and section nineteen, article two

of the Constitution of 1867, yet it has never been supposed that where a statute was properly passed, which contained provisions repugnant to those of a former statute, but not as an amendment thereof, that there must be an express repeal of such former statute to give validity to the latter. The law does not favor a repeal by implication, but a later statute, which contains provisions clearly repugnant to a former, repeals it as completely as though it contained express words to that effect. *Johnson v. Hahn*, 4 Neb., 146. *Goddard v. Boston*, 20 Pick., 410. *Whitney v. Blanchard*, 2 Gray, 208. *Pierpont v. Crouch*, 10 Cal., 316. So far as the provisions of section eight are in conflict with section nine, the same are repealed, and the ordinance is not void because it does not repeal section eight in express terms.

The third objection is that the ordinance in question contains provisions in conflict with the state law—that is, it provides a different form of license from that given in the statute. The authority cited to sustain this proposition is *Canton v. Nist*, 9 Ohio State, 439. Whatever may be thought of the reasoning of the court and the conclusion reached in that case, it fails to show the invalidity of the ordinance complained of.

*Fourth.* The attorney for the petitioner contends that the city council has no power to regulate the closing of saloons. Section thirty-nine of the act creating cities of the second class provides that the city council may pass ordinances:

"To restrain, prohibit, and suppress billiard tables and bowling alleys kept for public uses, houses of prostitution and unlicensed tippling shops, gambling and gambling houses, and other disorderly houses and practices, and all kinds of public indecencies, and all lotteries or fraudulent devices and practices for the purpose of obtaining money or property.

"To prevent any desecration of the Sabbath day, com-

monly called Sunday, and to prohibit public amusements, shows, exhibitions, or ordinary business pursuits upon said day.

"To prevent intoxication, fighting, quarreling, dog-fights, cock-fights and all disorderly conduct.

"To forbid, punish, and prohibit the selling or giving away of any intoxicating malt, vinous, mixed or fermented liquor to any minor, apprentice, or insane, idiotic or distracted person, habitual drunkard, or person in the habit of getting intoxicated." Comp. Stat., 107, 108.

Section sixty-nine authorizes the mayor and council to pass ordinances "To license, regulate, and prohibit the selling or giving away of any intoxicating malt, vinous, mixed or fermented liquor, the license not to extend beyond the municipal year in which it shall be granted, and to determine the amount to be paid for such license; *provided*, that the city council or board of trustees may grant permits to druggists for the sale of liquors for medicinal, mechanical, sacramental, and chemical purposes only, subject to forfeiture, and under such restrictions and regulations as may be provided by ordinance; *provided further*, that in granting licenses such corporate authorities shall comply with whatever general law of the state may be in force relative to the granting of licenses." Id., 115.

It is contended that the latter portion of the section takes away the power of the city council to impose any condition upon the selling of liquor not imposed by the state law. The effect of the language of the statute is, that license shall be granted in the manner provided by the state law —that is, upon petition signed by thirty resident freeholders of the precinct or town where the liquor is to be sold. The application is to be filed with the proper officer, notice thereof to be given, a hearing had thereon, the amount to be paid for the license, which in no case can be less than $500, to be paid, and a bond given as required by law, etc. That the authority to regulate the opening and closing of

saloons, where it is exercised in a reasonable manner, is conferred upon the mayor and council of a city of the second class, there is no doubt. And where such saloons are permitted to keep open during ordinary business hours it will not be deemed an abuse of such authority. Ordinances relating to the health, comfort, convenience, good order, and general welfare of the inhabitants of a municipality are authorized under the police power of the city. Every citizen, while protected in the ownership of his property, which cannot be appropriated to the use of the public without just compensation, nor to private use at all without the consent of the owner, yet is held subject to the police regulation that it shall be so used as not to prove pernicious to his immediate neighbors or to citizens generally. These regulations rest upon the maxim "that regard be had to the public welfare, is the highest law." Dillon on Mun. Cor., § 93. Broom's Legal Maxims, I. The ordinance in question is valid, and the petitioner having been convicted of its violation cannot be discharged on habeas corpus.

The writ is denied and the proceedings dismissed.

JUDGMENT ACCORDINGLY.