Beard *v.* Lofton.

Judgment affirmed.

Filed June 24, 1885.

No. 11,835.

BEARD *v.* LOFTON.

CONTRACT.—*Construction of.*—*Mistake.*—In the construction of contracts the leading purpose is to ascertain the true meaning of the contracting parties; but in doing this courts are confined to the contract as written, in the absence of proper averments of mistake.

SAME.—*Decedents' Estates.*—*Agreement as to Distribution Among Heirs.*— *Will.* —Under an agreement, signed by the heirs of L., that "in the distribution of" his estate, B. "shall receive an equal share with each other child," said B. is entitled to share in the common estate, if any, in which each is entitled to share, and not in personal property and lands which have been disposed of by will to one of such other children.

SAME.—*"Distribution."*—*Presumption.*—In the absence of a showing to the contrary, it will be presumed that the word "distribution" was used in the statutory and ordinary sense with reference to the personal property and money arising from the sale of real estate by the administrator, remaining after the payment of debts and legacies.

SAME.—*Parties.*—In an action by B. upon such contract, all the signers thereto are necessary parties defendants.

SAME.— *Want of Consideration.*—*Answer of.*—An answer that the contract sued on was executed by the defendant without any consideration whatever, is sufficient in form and substance.

EVIDENCE.— *Witness.*—*Practice.*—*Supreme Court.*—A mere offer to prove a fact by a witness, without asking any question to elicit it, is not sufficient to present any question to the Supreme Court upon a ruling rejecting the evidence.

From the Washington Circuit Court.

*S. B. Voyles, H. Morris* and *J. Dailey,* for appellant.

*D. M. Alspaugh* and *J. C. Lawler,* for appellee.

ZOLLARS, J.—This action is based upon the following written contract:

"This agreement witnesseth that we, the undersigned children and heirs of Simeon Lofton, deceased, hereby promise and undertake to pay the costs in the cause pending in the Supreme Court of Indiana, in which Mary A. Beard is appellant and David Beck, administrator of said estate, is appellee, and to pay Samuel B. Voyles $30.06, in consideration that said Mary A. Beard shall dismiss and discontinue said suit and not revive nor recommence the same again; and the undersigned hereby agree that in the distribution of said estate, Mary A. Beard shall receive an equal share with each other child of said Simeon Lofton. April 6th, 1880.

"ALEXANDER LOFTON.
"HARRISON LOFTON.
"THOMAS LOFTON.
"WM. Z. PAYNE.
"CAROLINE PAYNE."

Appellant brought this action against Alexander Lofton alone. Her complaint was in two paragraphs. The material averments of the second paragraph may be summarized as follows: Before April 6th, 1880, Simeon Lofton, the father of the parties, died testate, the owner of certain described lands. By the terms and provisions of his will, the lands

were devised to appellee in fee simple, subject only to the life-estate in the mother, who died before this action was commenced. Prior to the making of the contract, appellant had filed a claim against the estate of the father and testator for $2,200. Upon a trial below she was defeated, and appealed to this court. This is the claim and appeal referred to in the contract, a copy of which was filed with each paragraph of the complaint. It is averred that appellee agreed and promised by said written contract, that appellant should have as much of the estate as should come to his hands. Upon the delivery of the contract to appellant, she dismissed her appeal and abandoned her suit. The land, it is averred, was distributed to and vested in appellee, by reason of the will, and in no other way.

David Beck, as the administrator with the will annexed, had closed up the estate of the father by final settlement before this action was commenced. Appellant received nothing from the estate by distribution or otherwise. The other children, except appellee, got nothing, and were entitled to nothing in the lands under the provisions of the will or otherwise.

Appellee has refused to divide the lands with appellant equally, or in any other way, and has refused to account to her for the value. Prayer for damages against appellant on account of the breach of the contract.

The first paragraph is substantially the same, except that it is there averred that the father left a personal estate, a part of which was devised to appellee.

An issue was made, and the case was tried upon the first paragraph. Appellee demurred to the second paragraph, and stated as grounds of demurrer : *First.* That it did not state facts sufficient to constitute a cause of action against him ; and, *Second.* That there was a defect of parties defendants, in that the other persons who signed the contract with him, naming them, had not, but should have been, joined as parties defendants.

This demurrer was sustained, and appellant excepted. She assigns this ruling as error.

It is said by her counsel that the demurrer was sustained wholly upon the first ground therein stated. But as the record does not show that the case is before us for decision as to whether or not upon either ground, the demurrer was properly sustained. As the first ground of demurrer presents the controlling question in the case, we limit our examination, in the main, thereto.

The complaint alleging neither mistake nor fraud, of course a reformation is not asked for. The contention is that under the contract and the averments in the complaint, appellant is entitled to recover from appellee an amount equal to one-half the value of the land. In the construction of contracts the leading purpose, of course, is to ascertain the true meaning of the contracting parties. But, in doing this, courts are confined to the contract as written, in the absence of proper averments of mistake. The following has been quoted by this court with approval from Mr. Greenleaf: " The terms of every written instrument are to be understood in their plain, ordinary, and popular sense, unless they have, generally, in respect to the subject-matter, as, by the known usages of trade, or the like, acquired a peculiar sense, distinct from the popular sense of the same words; or unless the context evidently points out that, in the particular instance, and in order to effectuate the immediate intention of the parties, they must be understood in some other and peculiar sense." *Evansville, etc., R. R. Co.* v. *Meeds*, 11 Ind. 273.

We are met at the threshold with this decisive question, What was the estate about which the parties were contracting, and from which appellant was to receive a share ? It was stipulated in the contract that in the distribution of the estate of the father, appellant should receive an equal share with each other child. This clearly implies that the estate in which she should share was an estate in which each other child should share. It was in reference to such an estate that the contract

was made, as is clearly shown by the terms of the contract. This could not have been the lands, because it was utterly impossible for each of the other children to share in them. The lands had been disposed of by the will, and had thus become the absolute property of appellee. The other children could not share in them. It is averred in the paragraph of complaint under examination, that the other signers of the contract, except appellee, "got nothing, and were entitled to nothing in said lands, under the provisions of said will, or otherwise." If the other children were not entitled to share in the lands, clearly they did not constitute the estate, nor a part of the estate, in the distribution of which appellant was to share equally with them. Undoubtedly the contract had reference to an estate in which each of the other children might be entitled to share. Just why appellant should contract to share with the other children we can not say from anything in the paragraph of complaint. It is enough that she did it. We can conceive of reasons, such as an advancement.

She was also to get her share with each other child through "the distribution of the estate." That distribution could not have had relation to the lands, because the other children were not to share in them under any contingency; they had been disposed of by the will.

In the sense of the statute, and in the sense in which the terms are generally used, the distribution of an estate has reference to the personal property and money arising from the sale of real estate by the administrator, among the heirs, after the payment of the debts and legacies. 2 R. S. 1876, p. 543, section 137; R. S. 1881, section 2405. In the absence of a will, the land is not distributed, but descends to the heirs. If there be a will, the lands are not distributed, in the statutory and ordinary sense, but go by force of the will. Until something appears to the contrary, it ought to be presumed that the word "distribution" was used in the statutory and ordinary sense. It should be observed too, that

so far as shown by the paragraph of the complaint before us, there may have been an estate other than the lands to be distributed. It is not alleged in the complaint that the lands were the only property owned by the father at the time of his death. The contrary, rather, is made to appear.

It is averred that an administrator with the will annexed had been appointed, and had closed up the estate. The real estate, then, was not the only property that might have been contracted about. Whether the estate in the hands of the administrator was exhausted in the payment of debts and legacies, is not shown by any averment in the paragraph of complaint. The inference from the averments in the complaint is, that at the time the contract was made, there was an estate other than the lands to be distributed. And the unavoidable inference from the language of the contract, in connection with the averments of the complaint, is, that such was the estate about which the parties were contracting.

It is averred that appellant received nothing from the administrator, but no wrong is charged upon appellee in that regard. The contention in this paragraph of complaint is confined to the lands. For aught that appears, appellant might have received from the administrator had she sought to do so. We conclude that the second paragraph of the complaint does not show that appellant was entitled to recover from appellee for any part of the value of the lands, and that the demurrer was therefore properly sustained to it. And without taking the time to state reasons here, we are of the opinion also that the other signers of the contract should have been made parties defendants with appellee.

When we come to consider the evidence, under the motion for a new trial, we find that the entire property of the father was disposed of by his will. The lands were devised to appellee in fee simple, subject only to a life-estate in the mother, and the charge of two specific legacies of $300 each to grandchildren of the testator. Certain specific articles of personal property were also devised to appellee. Following this, the

will proceeds as follows: "Item 3. I will and bequeath unto my wife, Matilda Lofton, all my personal property of every description not heretofore otherwise disposed of." This will disposed of all the testator's property of every description, making the wife the absolute owner of the personal property other than that devised to appellee. So that, when the contract was made, there was in fact no estate to be distributed to "each other child." The administrator is shown to have taken into his hands some $5,000 of personal property. In his final report, which was approved by the court after the death of the widow in 1881, he showed that he had turned over to appellee and the widow under the will, $3,959.42. The balance he paid out on debts, except $1,372.27 which he turned over to the administrator of the widow's estate. This report and its approval are an adjudication that after the payment of debts the entire personal estate belonged to appellee and the mother. They were the only persons who could, in any sense, be regarded as distributees. It was not possible for "each other child" to share in the estate, until the will should be overthrown, and no one attempted that so far as we know. There was then in fact no estate of the father in which appellant was entitled to share equally with each other child, because there was no estate in which each other child could share. There was, therefore, no estate in the distribution of which appellant was entitled to share. She accepted a contract, limiting the estate in which she should share, to an estate in which each other child should share, and took the risk of there being such an estate. And now that it has turned out that there is and was no such estate, we know of no way, in this action, to relieve her from the embarrassment. Whether she knew of the will of the father, or whether she knew of it, but misunderstood the force and effect of its provisions, is not shown by the complaint nor by the evidence.

It is possible that she did not know of the will, or did not think that it carried all the personal property, and contracted

with the idea that there would be an estate for distribution to the other children, in which she should share equally with them. Did it affirmatively appear that she and the other contracting parties knew of the will, and understood that by its provisions all of the property was so disposed of that the other children would be entitled to nothing, the case would be somewhat different. Such a state of facts, possibly, would afford plausible ground for an argument that the contract should be so construed as to mean that appellant should have such a share in the estate as each child would have had but for the will. Then it might be said with a degree of plausibility that as the parties knew that there could be no estate in which each other child could share, they must have intended to contract with reference to the property covered by the will, and to measure appellant's interest by the amount that each child would have been entitled to receive had there been no will. Even then, to carry out and enforce such a supposed intention, it would seem to be necessary that the contract should first be reformed, so as to express the intention; but that is not the case before us.

It is not possible to construe the contract as appellant would have it construed. To do this the contract must be made to read that she shall receive an equal share with appellant in the real and personal property which he received under the will. This is impossible without substituting one contract for another.

There being, and having been, no property out of which each other child was entitled to a share, no property for distribution to them, we are compelled, reluctantly, to hold that there is no property out of which appellant is entitled under the contract to receive a share, and that, therefore, she is not entitled to recover against appellee.

It is stated in the record that appellant offered to prove by Samuel Bullington that a large amount of personal property, not mentioned in the will, had come into the hands of appellee. Complaint is made that this offer was rejected.

No question is presented for our decision by the record, because no questions were asked of the witness. This has been so ruled by this court, and we content ourselves by a reference to the case of *Higham* v. *Vanosdol*, 101 Ind. 160.

We may observe in passing, that it was impossible that there should have been any property not covered by the will.

The fourth paragraph of answer filed by appellee is that the contract sued on was executed by him without any consideration whatever. This answer is sufficient in form and substance. *Moyer* v. *Brand, ante*, p. 301.

Appellant contends that it is insufficient, because it purports to, but does not, answer the whole complaint. We think otherwise. It assails the contract upon which the action is based, and if that falls the whole case necessarily falls with it.

Finding no error in the record for which the judgment should be reversed, it is affirmed, with costs.

