### No. 16,174.

## THE CITY OF VINCENNES *v.* THE CITIZENS' GAS LIGHT COMPANY.

MUNICIPAL CORPORATION.—*Ordinance Providing for Supply of Gas.—Construction of.—Exclusive Privilege.*—The defendant passed an ordinance granting to the plaintiff's assignors, for a period of twenty-five years, the privilege of laying gas mains, to supply gas for illuminating purposes, along certain streets of the city. It was provided that the defendant should maintain a certain number of lamp-posts, and such additional lamp-posts and lamps along said mains as the city council might from time to time direct. It was further provided that, upon the erection of said lamps, the city should take sufficient gas from the company to keep the said lamps lighted, and should pay at the rate of three dollars per month for each and every lamp. Afterwards an extension of the mains was ordered, and the plaintiff submitted a proposition concerning the use and payment of the additional lamps to be provided. The propo-

sition was accepted by the common council, with the stipulation "that it be in force no longer time than the original contract." This subsequent arrangement was referred to as a contract in a number of resolutions passed by the common council in ordering the extension of mains.

*Held,* that although no definite time was mentioned in the ordinance during which the defendant was obligated to take gas for lighting its street lamps, the interpretation of the ordinance by the ordinary rules of construction and the acts of the parties thereunder, show that, by the ordinance, the city contracted to pay for twenty-five years for the gas furnished by the lamps provided for therein and by those afterward erected.

*Held,* also, that the ordinance did not grant an exclusive use of the streets, and that a monopoly was not given for supplying the city with gas for street lighting purposes.

*Held,* also, that the contract was not void on account of any supposed surrender by the common council of its legislative power.

SAME.—*Right to Contract for Supply of Gas.—What Period not Considered Unreasonable.*—A city has the power to contract for a supply of gas or water for a period extending beyond the tenure of office of the individual members of the common council making such contract. It can not be said that twenty-five years is an unreasonable time for which to contract for a supply of light or water.

SAME.—*Act of March 3d, 1883, Construed.*—The act of March 3d, 1883 (Elliott's Supp., section 794), authorizing the common councils of cities to contract for light for its streets and alleys for a period of time not exceeding ten years, does not affect the contract sued on. By the fourth section of the act, existing contracts, except such as confer exclusive privileges, are declared to be valid. The contract involved did not confer exclusive privileges, and it is therefore not affected by said act.

SAME.—*Pleading.—Answer.—Conflict of Ordinances.*—In an action brought by the plaintiff to recover for gas supplied to the defendant for public street lighting, under said ordinance, a demurrer was properly sustained to a paragraph of answer which alleged that, at the time of the passage of said ordinance, an ordinance of the defendant was in force which required that proposals for work, the estimated cost of which should exceed $40, should be let to the lowest bidder after a notice for proposals had been given by publication, and that the ordinance in suit was passed in violation of this ordinance. The ordinance claimed to have been violated evidently referred to work done for the city, and not to contracts such as the one in suit. If the passage of the ordinance sued on was within the prohibition of the other ordinance, its passage repealed it *pro tanto.*

SAME.—*Answer.—Attempted Partial Annulment of Contract.*—A paragraph of answer was also bad which alleged that the common council, by resolution, prohibited the plaintiff from supplying gas after a certain date for ten of the lamp-posts specified in the complaint. The contract was

mutually binding upon both the contracting parties, and neither could, by its own act, prejudice the position of the other.

CONTRACT.—*Ambiguous.*—*Construction of by Parties.*—*Duty of Court.*—It is the duty of a court, where the language of a contract is indefinite or ambiguous, to adopt the construction and practical interpretation which the parties themselves have put upon the contract, and to enforce that construction.

PRACTICE.—*Appeal.*—*New Trial.*—*Amount of Recovery.*—In order to present a question on appeal, relating to the amount of the recovery, it must be assigned as a cause for a new trial.

From the Knox Circuit Court.

*J. T. Goodman, W. A. Cullop, C. B. Kessinger, J. M. Butler, A. H. Snow* and *J. M. Butler, Jr.*, for appellant.

*W. H. De Wolf, G. E. Reily* and *J. W. Emerson*, for appellee.

MILLER, J.—The appellee brought this suit against the appellant to recover for gas supplied to appellant for public street lighting for a period of ten months under the provisions of an ordinance enacted by the common council of the city and accepted by the appellee.

The ordinance is as follows:

"An ordinance to provide for the lighting of the city of Vincennes, Indiana, with gas.

"Section 1. There is hereby granted and secured to Laz. Noble and associates, their successors and assigns, the privilege of laying gas mains and pipes for supplying illuminating coal gas along the several streets, alleys, thoroughfares and public grounds of the city for twenty-five years from the date of this ordinance, the said mains and pipes to be so laid as not to interfere with the drainage or sewerage of said city, but, before laying down any such mains or pipes, five days' notice shall be given to the mayor of the commencement of the work, and such mains or pipes shall be laid with reasonable diligence, and the streets and alleys shall be repaired and restored to their original condition without delay.

"Sec. 2. That for the purpose of supplying gaslight up-

on the several streets of said city, the said Laz. Noble and associates, their successors and assigns, shall lay down the required mains and pipes to supply gas for lighting the street lamps at the several street crossings along the following streets, viz.: (Omitted.)

"Sec. 3. The said Laz. Noble and associates, their successors or assigns, may erect within said city all suitable and necessary buildings and works for making illuminating coal gas of the most approved quality and purity for supplying the public lamps and private consumers of said city, and shall at all times supply the same in sufficient quantities for the public use as well as for private consumption. Said works to be completed and in operation on or before the first day of September, 1876, and in case they are not so completed, the rights and privileges hereby granted shall cease and be void.

"Sec. 4. Upon the laying of the mains and pipes as above provided, the city of Vincennes shall erect and maintain at the several street crossings within the limits prescribed in the above section two, at least two public lamp posts with lamps, having all the needed fittings and fixtures for lighting, and may also erect and 'maintain along the lines of said mains and pipes such additional lamp posts and lamps as the city council may from time to time direct, and, upon the erection of said lamps, said city shall take from the gas works, so to be erected, sufficient gas to keep said lamps lighted as similar lamps are usually lighted in other cities. The public lamps already located on the lines of said proposed mains, belonging to the city, where the same are properly located, are to be included as part of the number provided for in this ordinance.

"Sec. 5. The said Laz. Noble and associates, their successors and assigns, shall at all times supply all the public lamps with illuminating coal gas, of approved quality and pureness, and of illuminating power equal to standard, fourteen sperm candle light, the burners to be used to be five

feet burners; and they further agree to light and extinguish the public lamps according to the 'American Meter Company's' time tables in use for lighting and extinguishing similar lamps in cities generally, and to furnish gas, light, clean and extinguish such lamps, for all of which the said city of Vincennes shall pay them at the rate of three dollars per month for each and every lamp so furnished with gas, lighted, extinguished and cleaned, in monthly payments. And they also agree to supply all other lamps of the city, and the inhabitants who may desire it, with coal gas, as aforesaid, for their private use, at the rate of three dollars per 1,000 cubic feet, payable on bills rendered monthly. They shall make all needed repairs to the public lamps, purchase the material therefor, and render bills therefor against the city at cost, for payment.

"Sec. 6. The said Laz. Noble and associates, their successors and assigns, agree to extend their mains along the same, or other streets, whenever so required by the city council, provided there shall be found at least three average private consumers upon each square upon such proposed extension. And if the city council shall determine at any time to light any street or thoroughfare beyond the limits herein before specified, the said city council may at the city's expense extend the pipes and erect such additional posts and lamps as they may deem proper, and such lamps shall be lighted, extinguished and cleaned on the same terms as others are. Any pipes so laid shall only be used for supplying the public lamps, unless said Noble and associates, their successors and assigns, shall pay the city for said extended pipes.

" Sec. 7. The said Laz. Noble and associates may organize as a joint stock company, under the laws of the State of Indiana, for the purpose of constructing, equipping and operating the gas works contemplated in this ordinance, and in case they shall so organize, all the rights, privileges and agreements contained herein shall enure to such company.

" Sec. 8. The city reserves the right to test at all times the accuracy of the meters, and the quality and purity of the gas, by any competent agent that may be appointed by the city council.

" Sec. 9. The said Noble and associates shall enter into bond with surety for the performance of the stipulations in this ordinance in the penalty of ten thousand dollars, within forty days from the passage hereof, and, on failure so to do, this ordinance and all the rights conferred therein shall be null and void.                    W. H. H. BEESON,
                                          *"Mayor.*

" Passed December 27th, 1875.

"Attest:   EMIL GULL,
                 *" City Clerk."*

The complaint shows that after the passage of the ordinance the appellee company was organized, and received from Laz. Noble and associates an assignment of all their rights conferred by the ordinance, and that on the 22d day of May, 1876, the appellee notified the appellant, in writing, of their acceptance of the terms and provisions of said ordinance ; that the company erected the works, laid the mains authorized by the ordinance, and in all respects complied with its terms and conditions.

The complaint shows that, within a short time after the completion of the works, as originally agreed upon, petitions were filed with the common council by citizens and taxpayers for an extension of the mains, and the location of additional lamps was ordered.

This was continued from time to time until April, 1880, when the city ordered the mains so extended as to provide for fifty additional lamps.    The gas company hesitated in agreeing to the extension, but after some negotiations between the city and gas company, a proposition was made in writing by the company to the city council, in which this language was used :

"As this work will necessitate a very large expenditure of

money by the company, and many years will probably elapse before any adequate returns will be realized, the company will require that upon the first of each month, lamps upon any streets that are ready for lighting shall be put in use without waiting the completion of the entire work. As a large quantity of materials must be contracted for, and other necessary preparations be made, an early disposition of the above proposition is desired. If this proposition is agreed to, it is expressly understood that it shall in no respect affect or change the contract existing between the city and the company."

In reporting this proposition to the city council, the committee on gas, who were conducting the negotiations on the part of the city, said :

"We recommend that the proposition be accepted, with the stipulation that it be in force for no longer time than the original contract, and end at the time when said original contract ends."

This report was received and concurred in by the council, and the mains were extended and lamp posts put up and supplied with gas by the company.

The arrangement between the city and gas company was referred to as a "contract" in many other resolutions adopted by the city council in ordering extensions of the mains and location of lamp posts.

It is averred in the complaint that the company supplied gas of the proper quality for the lamp posts agreed upon, amounting in all to two hundred and thirty-two posts, continuously from the time of their erection until the beginning of the suit, that the city paid the company at the rate of three dollars per lamp, per month, for all of the lamps up to and including November, 1889, but refused to pay the monthly bills of $696 each, from December 1st, 1889, up to and including October, 1890, though demand for payment was made soon after the expiration of each month.

A demurrer for want of facts was filed to the complaint and overruled, and the ruling is assigned as error here.

The appellant contends that the ordinance of December 27, 1875, and its acceptance by the appellee do not constitute an agreement binding the city to buy gas from the company for lighting the streets of the city for twenty-five years; that, fairly construed, it gives the company the right to use streets of the city for that length of time, but that the grant is not exclusive, and that the city might grant another gas company the use of the same streets; that the ordinance fixes the price to be paid by the city *per lamp per month* so long as the city desires to take gas from the company, but no longer.

No time is fixed in express words during which the city was to take gas from the company for lighting its street lamps. This makes it important to determine the rules of construction to be applied to the ordinance under consideration.

It is insisted by the appellant that the ordinance is simply a grant of the franchise to lay pipes and mains in the streets, alleys and thoroughfares of the city for the purpose of supplying it, and its inhabitants, with gas; and that in such cases the grant is to be taken strongly against the grantee, and nothing is to be taken by implication against the public, except that which necessarily flows from the nature of the grant. *Indianapolis, etc., R. R. Co.* v. *Citizens', etc., R. R. Co.,* 127 Ind. 369, and cases there cited, sustain this doctrine where the ordinance simply grants a franchise. We are, however, of the opinion that the ordinance under consideration is something more than a grant. It is a grant in so far as it confers upon the company the right to lay its mains and pipes in the public streets, and if the controversy in this case related to the nature and extent of that grant, these authorities would be in point and of importance.

In addition to the grant above referred to, the ordinance embodies a contract between the city and the company for

the supply of gas.   It is this contract which is in dispute, and which furnished the subject-matter of this controversy.

The ordinance was, in effect, an offer by the city, the acceptance of which by the company created a contract between the parties, measured, like any other contract, by the terms and conditions of the writings.   We see no reason why the contract thus formed should not be construed and interpreted like any other written contract.

We are to look to the language employed, and in case terms are ambiguous, or susceptible of more than one meaning, may, in order to arrive at the intention of the parties, inquire as to their situation at the time the contract was entered into, and the purpose to be accomplished by its execution.   *Beard* v. *Lofton*, 102 Ind. 408; *H. G. Olds Wagon Works* v. *Coombs*, 124 Ind. 62 ; *Lyon* v. *Lenon*, 106 Ind. 567.

In 5 Lawson Rights and Remedies, section 2316, the rule of interpretation is expressed in this language :

" In all contracts where the meaning of language is to be determined by the court, the governing principle must be to ascertain the intention of the parties through the words they have used.   This principle is one of universal application.   So every part of a document should be construed with reference to the intention of the parties, as to the whole contract.   To ascertain that intention, regard must be had to the nature of the instrument itself, the condition of the parties executing it, and the objects which they had in view."

We are forced to the conclusion that at the time the ordinance was enacted by the common council of the city, and accepted by the gas company, it was mutually understood that the company was to furnish gas for street lighting, and the city was to pay for gas so furnished, at the agreed price, for the period of twenty-five years.

It is evident that the company was unwilling to put in the plant, or, after it was put in and in operation, to extend the mains, unless both the city and private consumers would agree to take gas.   We can not but know that it is the almost

universal custom for companies and individuals, contracting to furnish either water or gas, before undertaking the large expenditure necessary to putting in the necessary plant, to require a contract for taking water or gas for public use for a specified time and at an agreed price.

The only time mentioned in the ordinance that could in any manner fix the time during which the gas for street lighting should be furnished by the company, and paid for by the city, is twenty-five years. If the contract is not for that period of time, no time is fixed, and the city might, immediately upon the completion of the work, have discontinued the use of gas in its streets. We can not believe that the parties intended to leave the use of gas for street lighting to the uncontrolled option of one of the contracting parties. If this is the construction to be placed upon the ordinance, it amounts to little more than a grant of the use of the streets for laying pipes and mains; the city being able at any time to discontinue the use of its lamps, unless gas was furnished at its own price.

Whatever of doubt we might have entertained upon the construction of the ordinance is dispelled by the construction and practical interpretation placed upon it by the parties themselves in their subsequent dealings.

The stipulation in the contract made for extension of the mains and supply of gas for additional lamps, that the arrangement should " be in force for no longer a time than the original contract, and end at the time when said original contract ends," shows that both the contracting parties, at the time when this language was used, understood that some time was fixed in the original contract for the termination of the agreement made by the company, on the one hand, to furnish gas, and by the city, on the other, to pay for the same at the agreed price.

This time must, we think, necessarily be at the end of the twenty-five years mentioned in section one of the ordinance.

That it is the duty of a court, where the language of a contract is indefinite or ambiguous, to adopt the construction and practical interpretation which the parties themselves have put upon the contract, and to enforce that construction, has been so often asserted by this and other courts that no doubt of its soundness can be entertained. *Ingle* v. *Norrington*, 126 Ind. 174; *Pate* v. *French*, 122 Ind. 10; *Louisville, etc., R. W. Co.* v. *Reynolds*, 118 Ind. 170; *Vinton* v. *Baldwin*, 95 Ind. 433.

We do not think this construction of the ordinance is subject to the objection that it, in effect, gives the company an exclusive privilege.

There is no exclusive grant to the company to the use of the streets. It may be that no other company is likely to attempt the occupancy of the same streets at or near the location of the mains and pipes of this company, but it is by no means impossible.

Whatever there is of an exclusive nature in the grant for the use of the streets is such as is the necessary result of all such grants. To deny the right to make grants that will not prevent a like occupancy by another company would prevent the construction of plants for the distribution of gas and water, or the use of streets for street railways, for two railways can not occupy the same space in a street. *Indianapolis, etc., R. R. Co.* v. *Citizens', etc., R. R. Co., supra.*

So far as the ordinance gives the company the use of the streets it is in the nature of a license, and not exclusive. *Crowder* v. *Town of Sullivan,* 128 Ind. 486; *Rushville Gas Co.* v. *City of Rushville,* 121 Ind. 206.

Neither does the contract give the company a monopoly of supplying gas to the city for street lighting. The city agrees to take a certain quantity of gas for a specified period of time, leaving it the unrestricted right to either manufacture or purchase as much more as it desires. This is not the class of contracts which the law denounces as monopolistic.

The making of contracts for the supply of light and water for a considerable time, at fixed prices, is ordinarily necessary and permissible. *Crowder* v. *Town of Sullivan, supra; Citizens', etc., Co.* v. *Town of Elwood,* 114 Ind. 332.

There is in the ordinance no agreement or provision preventing the city from taking gas from any other company. The contract entered into relates to the street lamps mentioned in section two, and such "additional lamp posts as the city council may from time to time direct." The ordinance authorizes the city to compel the company to extend its mains and pipes, under certain conditions, and furnish light for additional lamps; but we do not understand the contract as one which compels the city to take gas from this company for all additional lamps which might be needed to light the city. As we construe the contract, the city might have restricted the gas company to the lamps provided for in section two, and contracted with some other company for all additional lamps; the liability of the city to pay for gas furnished for additional lamps being dependent upon contracts with the company, subsequently made, by which it was agreed that the mains should be extended and gas furnished upon the same terms and for the same period of time provided for in the original ordinance.

If the ordinance contained a provision by which the city agreed to take gas from no other company, or prohibiting any other company from engaging in the business of making and selling gas, the case of *Davenport* v. *Kleinschmidt,* 6 Mont. 502, and cases collated in *Matter of Union Ferry Co.,* 98 N. Y. 139 (150), would be in point.

In our opinion the contract was not void on account of any supposed surrender by the common council of its legislative power. Every contract, or ordinance in the nature of a contract, does to some extent limit and control the power and authority of future councils. This is and must be the unavoidable result of every binding contract. We do not re-

gard this as being an open question in this State. In *City of Valparaiso* v. *Gardner*, 97 Ind. 1, this court said :

" There is a distinction between powers of a legislative character and powers of a business nature. The power to execute a contract for goods, for houses, for gas, for water and the like, is neither a judicial nor a legislative power, but is a purely business power. The question is, however, so firmly settled by authority that we deem it unnecessary to further discuss it. *City of Indianapolis* v. *Indianapolis, etc., Co.,* 66 Ind. 396 ; Dillon Munic. Corp. (4th ed.), sections 473, 474." See, also, *Crowder* v. *Town of Sullivan, supra; New Orleans Gas-Light Co.* v. *City of New Orleans,* 42 La Ann. 188.

We discover nothing in the ordinance that contains any substantial limitations of the legislative power of the common council. The question of the extent to which the common council have power to change or alter the location of the lamp posts, when once established, is not before us in this appeal. We are of the opinion that nothing in the ordinance impairs the authority of the common council to make all needful changes in the grade of its streets. Elliott Roads and Streets, 334.

Whatever may be the law in other jurisdictions, this court is committed to the doctrine that a city has power to contract for a supply of gas or water for a stated period of time extending beyond the tenure of office of the individual members of the common council making such contract. *City of Indianapolis* v. *Indianapolis, etc., Co., supra ; City of Valparaiso* v. *Gardner,* 97 Ind. 1.

While the facts in these cases are not precisely like the one before us, the discussion and decisions so fully cover the questions involved in this case that we do not deem it necessary to examine the questions at length.

The making of contracts for the supply of gas or water is a matter delegated to the governing powers of municipalities, to be exercised according to their own discretion, and in the absence of fraud, while acting within the authority del-

egated to them, their action is not subject to review by the courts.

The length of time for which they shall bind their towns or cities depends upon so many circumstances and conditions as to situation, cost of supply and future prospects, that the courts can interfere only in extreme cases and upon seasonable application. We can not say that twenty-five years is an unreasonable time for which to contract for a supply of light or water.

Improvements made in the methods and cost of street lighting have in many instances rendered contracts that were fair and equitable when made seem now to be grinding and oppressive.

We are satisfied that the act of March, 3, 1883 (Elliott's Supp., section 794), did not affect the contract sued on. The first section of that act authorizes the common councils of cities to contract for lights for its streets and alleys for a period of time not exceeding ten years. By the fourth section of the act, existing contracts, such as confer exclusive privileges, are declared to be void.

We have arrived at the conclusion that the contract involved did not confer exclusive privileges, and it is therefore not affected by the legislation.

We do not decide that it is within the power of the Legislature to impair the obligation of such contracts, but simply that the act does not purport to do so. See, upon this subject, *City of Indianapolis* v. *Indianapolis, etc., Co., supra; New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650; *Louisville Gas Co.* v. *Citizens' Gas Co.*, 115 U. S. 683.

In our opinion the court did not err in overruling the demurrer to the complaint.

Errors are assigned upon the action of the court in sustaining demurrers to several paragraphs of answer; but, as the discussion of the questions involved in the ruling of the court upon the demurrer to the complaint covered all the

questions presented by the answers, except the second paragraph, we will not extend this opinion by referring to the others.

In the second paragraph of answer it is alleged that at the time of the passage of the ordinance mentioned in the complaint, an ordinance of the city of Vincennes was in force which required that proposals for work, the estimated cost of which exceeded forty dollars, be let to the lowest bidder after a notice for proposals had been given by publication; that the ordinance in suit was passed in violation of the terms of this ordinance.

It was also alleged in the answer that the common council, by resolution, prohibited the gas company from supplying gas for ten of the lamp posts specified after December 1st, 1889.

The action of the court in sustaining the demurrer to this paragraph of answer was not erroneous.

The ordinance claimed to have been violated evidently referred to work done for the city, and not to contracts such as this one.

If the passage of the ordinance sued on was within the prohibition of the other ordinance, its passage repealed it *pro tanto.* Dillon Munic. Corp. (4th ed.), section 314; *Inhabitants, etc., Burlington* v. *Estlow,* 43 N. J. L. 13; *Ex parte Wolf,* 14 Neb. 24.

The position of the appellant was not improved by the passage of an ordinance prohibiting the company from furnishing gas to ten of the street lamps. The contract was mutually binding upon both the contracting parties, and neither could, by its own act, prejudice the position of the other.

Objection is made to the allowance of interest upon the instalments, payable each month for gas furnished the city.

In order to present a question on appeal relating to the damages awarded, it must be assigned as a cause for a new trial. *Ringle* v. *First Nat'l Bank of Kendallville,* 107 Ind.

425. No motion was made for a new trial in this case, and no question relating to the amount of the recovery can, therefore, be made in this court.

We find no error in the record.

Judgment affirmed.

