Ronald TAYLOR, Appellant–Defendant,

v.

**THE TOWN OF NEW CHICAGO, a Municipal Corporation, Appellee–Plaintiff.**

**No. 45A05–0503–CV–156.**

Court of Appeals of Indiana.

Dec. 19, 2005.

John P. Bushemi, John P. Bushemi & Associates, Merrillville, for Appellant.

John P. Shanahan, Rhame & Elwood, Portage, for Appellee.

## OPINION

MAY, Judge.

Ronald Taylor appeals judgment for the Town of New Chicago, his former employer. Taylor raises one issue on appeal, which we restate as whether a town council may enter into a valid and enforceable employment contract with a chief of police when the contract permits termination only for good cause.[1] We affirm.

### FACTS AND PROCEDURAL HISTORY[2]

In September 2002, the Town of New Chicago hired Ronald Taylor as chief of police. He was hired as an at-will employee. All the incumbent members of the Town Council ("Council") were defeated in the May 2003 primary elections. In September and October of 2003, respectively, the Council and the Board of Metropolitan Police Commissioners ("Board") approved an employment contract for Taylor as chief of police that prohibited his removal without "good cause." Specifically, the contract provided:

**TERM OF CONTRACT**

This Contract is binding upon the Town of New Chicago from the date this Contract is approved until December 31, 2005.

\*　　\*　　\*　　\*　　\*　　\*

**TERMINATION OF CONTRACT**

The Town may only terminate this Contract under very specific instances, namely "good cause". It is intended that the term "good cause" shall mean such activities as those enumerated in Ind.Code [§ ]36-8-3-4: neglect of duty, violation of rules, neglect of orders, incapacity, absence without leave, immoral conduct, conduct injurious to public peace and welfare, conduct unbecoming of an officer.

It is understood by all of the parties to this Contract that there are various state statutes that govern tenure and termination of the police chief. The Council and Commission understand that this Contract gives Taylor rights that go beyond the provisions in applica-

---

1. The parties frame the issue as whether the town could enter into a valid contract with the chief of police when the contract extends beyond the term of office of the individual town council members. As we resolve this case on other grounds, we do not reach that issue.

2. Taylor did not include in his brief a copy of the orders being appealed pursuant to Ind. Appellate Rule 46(A)(10). The argument summaries provided by both counsel are inadequate and little more than "a mere repetition of the argument headings." App. R. 46(A)(7), 46(B) ("The summary should con-

tain a succinct, clear and accurate statement of the arguments made in the body of the brief. It should not be a mere repetition of the argument headings."). New Chicago did not "address the contentions raised in the appellant's argument" in its brief, as required by App. R. 46(B)(2). Taylor failed to include a standard of review in his brief, while New Chicago included a standard of review but failed to cite any authority for the standard. App. R. 46(A)(8)(b), 46(B) ("The argument must include for each issue a concise statement of the applicable standard of review.").

ble state statutes in regards to the removal of the Chief of Police. Any action to terminate this Contract may only be initiated by a "super majority" of both the Commission and the Council. The term "super majority" shall mean a three-fourth majority of all the members of each respective board. Furthermore, if such action becomes necessary, the matter shall be submitted to arbitration for preliminary and final determination. All such procedures would be governed by the rules of the American Arbitration Association. The Town shall bear the burden of proof in any such action, and shall be responsible for all costs of arbitration.

If the Council or the Commission is successful in terminating this Contract, the Town shall pay Taylor an amount equal to the Chief's salary for the remainder of the Contract. The payment of said amount shall be made within thirty (30) days of Taylor's removal as Chief of Police. If the Contract is terminated with less than twelve (12) months remaining before its expiration, the Town shall pay Taylor an amount equal to the Chief's salary for twelve (12) full months.

\*     \*     \*     \*     \*     \*

The Council and Commission hereby declare it onerous upon themselves to terminate this Contract in absence of Good Cause. The Council and Commission agree that to do otherwise would impair the operation of the Police Department free from undue influence or interference subject to the orders and Rules/Regulations of the New Chicago Police Department and the Commission. (App. at C.1, 2–3, 3–4.)

New members of the Town Council were elected in November 2003 and took office on January 1, 2004. On January 1, the new Council voted to terminate Taylor as chief of police and appointed his successor. The newly-appointed Board voted on January 14 to terminate Taylor. Thereafter, the Council reaffirmed its decision to terminate Taylor.

Based on the January 1st action of the Council, Taylor sent a letter to the Council on January 12, 2004, alleging New Chicago had breached his employment contract by terminating him without good cause and by not complying with the termination procedure in the contract. Pursuant to the liquidated damages provision of the contract, Taylor demanded payment of $60,507.45, which represented the wages he was due under the contract.

New Chicago refused to pay and sought a declaratory judgment that Taylor's employment contract with New Chicago was void, invalid and unenforceable. After a bench trial, the court found for New Chicago, ruling the employment contract impermissibly impaired the discretion of the successor town council to remove the police chief. Taylor filed a Motion To Correct Error that was denied by the trial court. Taylor now appeals the judgment for New Chicago.[3]

## DISCUSSION AND DECISION

■ The Uniform Declaratory Judgment Act provides declaratory orders, judgments, and decrees may be reviewed as other orders, judgments, and decrees. Ind.Code § 34–14–1–7. The trial court relied on stipulated facts in issuing its order but made its own conclusions as to the law. We review questions of law *de novo*. *Bad-*

---

3. We heard oral argument in this case on November 1, 2005 at the State House in In- dianapolis.

*er v. Johnson,* 732 N.E.2d 1212, 1216 (Ind. 2000).

Whether a town council and a chief of police may enter into a valid and enforceable employment contract that permits termination only for good cause is a question of first impression. To resolve the issue, we first examine the town's powers to act, including any legislative restrictions of those powers. We then consider whether Taylor's employment contract impermissibly impinges on the powers thus granted.

### The Town's Powers

The Legislature has granted towns and other governmental units in Indiana broad general powers to promote the "effective operation of government as to local affairs." Ind.Code § 36–1–3–2. A town has "all powers granted it by statute" and "all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute." Ind.Code § 36–1–3–4(b)(1), (b)(2). The Legislature has specifically authorized towns to enter into contracts. Ind.Code § 36–1–4–7. "Any doubt as to the existence of a power of a unit shall be resolved in favor of its existence." Ind.Code § 36–1–3–3(b).[4] Thus, the statutory scheme grants broad general powers, including the power to contract.[5]

Similarly, the Legislature has granted broad general powers regarding the hiring and firing of police officers, but it has also limited the power with respect to some officers. Ind.Code § 36–8–9–4 grants the board of metropolitan police commissioners the power to hire police officers and

appoint a chief of police, subject to the approval of the town council. Generally, the town executive[6] may discharge, reduce in grade or remove a town employee with the approval of the majority of the town council. Ind.Code § 36–5–2–13.

Although other town employees may be dismissed by the executive with town council approval, police officers may not be demoted or terminated except for good cause shown after notice and hearing. Ind.Code § 36–8–3–4, which governs the termination and demotion of police officers and limits the town's power, provides in part:

(a) This section also applies to all towns and townships that have full-time, paid police or fire departments. For purposes of this section, the appropriate appointing authority of a town or township is considered the safety board of a town or township. In a town with a board of metropolitan police commissioners, that board is considered the safety board of the town for police department purposes.

(b) Except as provided in subsection (m), a member of the police or fire department holds office or grade until the member is dismissed or demoted by the safety board. Except as provided in subsection (n), a member may be disciplined by demotion, dismissal, reprimand, forfeiture, or suspension upon either:

(1) conviction in any court of any crime; or

---

4. In that statute, the Legislature also explicitly abrogated the previous rule, under which doubts regarding the power of a local government unit were resolved against the power. Ind.Code § 36–1–3–3(a).

5. Although other statutes limit the powers of towns, *see, e.g.,* Ind.Code § 36–1–3–8 (listing

powers specifically withheld), the parties direct us to no statute specifically limiting a town's power to contract.

6. The president of the town council is the executive in a town. Ind.Code § 3–5–2–22(4).

(2) a finding and decision of the safety board that the member has been or is guilty of any one (1) or more of the following:

    (A) Neglect of duty.

    (B) A violation of rules.

    (C) Neglect or disobedience of orders.

    (D) Incapacity.

    (E) Absence without leave.

    (F) Immoral conduct.

    (G) Conduct injurious to the public peace or welfare.

    (H) Conduct unbecoming an officer.

    (I) Another breach of discipline.

The safety board may not consider the political affiliation of the member in making a decision under this section. If a member is suspended or placed on administrative leave under this subsection, the member is entitled to the member's allowances for insurance benefits to which the member was entitled before being suspended or placed on administrative leave. In addition, the local unit may provide the member's allowances for any other fringe benefits to which the member was entitled before being suspended or placed on administrative leave.

■ However, the Legislature has specifically exempted police chiefs from these protections. Subsection (m) provides:

Except as provided in IC 36–5–2–13, the executive may reduce in grade any member of the police or fire department who holds an upper level policy making position. The reduction in grade may be made without adhering to the requirements of subsections (b) through (l). However, a member may not be reduced in grade to a rank below that which the member held before the member's appointment to the upper level policy making position.

Ind.Code § 36–8–3–4(m).[7] Towns thus retain the authority to remove a police chief from the rank of chief without notice, hearing or good cause shown. *See Sheridan v. Town of Merrillville,* 428 N.E.2d 268, 271–72 (Ind.Ct.App.1981); *State ex rel Warzyniak v. Grenchik,* 177 Ind.App. 393, 400–02, 379 N.E.2d 997, 1002–03 (1978).

*Contracting Around the Statute*

■ The employment contract at issue in this case purports to modify the statutory scheme set out in subsection (m) of Ind.Code § 36–8–3–4. Specifically, the contract would limit the town's authority to remove Taylor as chief through an executive decision ratified by the majority of the council. The contract would instead require the town: 1) act on a three-fourths supermajority vote of both the Board and the Council; 2) show good cause for the demotion and submit the matter to arbitration; and 3) pay Taylor liquidated damages equal to his salary remaining under the contract if he is terminated.

The contract specifically sets forth the understanding of the contracting parties with respect to its potential conflict with subsection (m):

It is understood by all of the parties to this Contract that there are various state statutes that govern tenure and termination of the police chief. The Council and Commission understand that this Contract gives Taylor rights that go beyond the provisions in applicable state statutes in regards to the removal of the Chief of Police.

(App. at C.3.) Based on that language, Taylor argues the Council could and did "contractually waive its authority to termi-

---

7. The police chief holds an "upper level poli-    cymaking position." Ind.Code § 36–8–1–12.

nate Taylor except in the specific instance of 'good cause'." (Br. of Appellant at 12.)

By purporting to grant Taylor specific rights regarding termination of his employment as police chief, the contract necessarily limited New Chicago's power to act. *See City of Vincennes v. Citizens Gaslight Co.,* 132 Ind. 114, 125, 31 N.E. 573, 577 (1892) ("Every contract or ordinance in the nature of a contract does to some extent limit and control the power and authority of future councils. This is and must be the unavoidable result of any binding contract.") The question is whether the Council could so limit its own power. We hold New Chicago could not do so, Taylor's contract is void, and the demotion and termination of police chiefs is controlled by Ind.Code § 36–8–3–4(m).

In *Pippenger v. City of Mishawaka,* 119 Ind.App. 397, 403, 88 N.E.2d 168, 171 (1949), we found the city of Mishawaka had "wholly disregarded" its "statutory duty" because of a contract the city had with a railroad company. Under the contract, the city would vacate and close part of ten public streets for use by the railroad as a right-of-way for its main line. The contract provided the city would not charge the railroad for the costs associated with the closure nor assess its property for any benefits from the closure. Acting through its Board of Public Works, the city closed nine of the streets and, as provided in the contract, did not charge the railroad costs or assess its property for benefits. A statute required the board to consider whether closure would be in the public's best interest as well as to assess benefits and charge costs as appropriate. We held a city could not "absolve itself from these duties, or bargain away its right to exercise discretion vested in it by law in the performance of a public duty, by contract committing it to act in an agreed manner." *Id.,* 88 N.E.2d at 171.

Although *Pippenger* is factually dissimilar, we find its principle applicable to the case before us. The Legislature has determined towns ought to retain the authority to remove a police chief without notice, hearing or good cause shown from the rank of chief. The town may not "bargain away" this authority and "by contract commi[t] it[self] to act in agreed manner." *See id.,* 88 N.E.2d at 171. As we noted in *Pippenger,* the law requires the town "retain its freedom of judgment up to the very moment it was required to act so that its decision when finally made would be influenced only by regard for public welfare" and not by contractual agreements and liability concerns. *Id.,* 88 N.E.2d at 171; *see also State ex rel Scott v. Hart,* 144 Ind. 107, 111, 43 N.E. 7, 8 (1896) (voiding contract that deprived board of the right to exercise power without incurring liability for breach of contract).

Accordingly, we hold New Chicago may not enter into a contract for the chief of police that would permit termination only for good cause. Such a provision would conflict with Ind.Code § 36–8–3–4(m), the Legislature's explicit reservation of authority regarding the demotion and termination of police chiefs. Taylor's contract with New Chicago is, therefore, void.

Affirmed.

VAIDIK, J., and SHARPNACK, J., concur.