SOUTHERN INDIANA GAS AND ELECTRIC COMPANY *v.* CITY OF BOONVILLE.

[No. 27,162. Filed May 1, 1939. Rehearing denied June 12, 1939.]

*Daniel H. Ortmeyer, Dailey, O'Neal, Dailey & Efroymson, Edmund F. Ortmeyer, Ora A. Davis,* and *David L. Chambers, Jr.,* for appellants.

*Matson, Ross, McCord & Clifford, Sylvester T. de Forest,* and *Harry T. Ice,* for appellee.

SHAKE, J.—This is an appeal from an interlocutory order appointing appraisers in an action to condemn and acquire certain electrical utility property used and useful in the city of Boonville, including a line outside the city, but within six miles thereof, which serves a municipal water plant and some private consumers. Appellant Southern Indiana Gas and Electric Company is the owner of the utility property; appellant Bankers Trust

Company, Trustee, holds a mortgage on said property; and appellee is the municipal corporation which is seeking to acquire the same.

Appellants filed separate objections to the complaint; evidence was heard; and the order appointing appraisers entered. There were motions for a new trial on behalf of both appellants assigning that the decision appealed from was not sustained by sufficient evidence and was contrary to law. The errors assigned relate to the overruling of appellants' objections and to the denial of their motions for a new trial.

It is first asserted on behalf of the appellants that the trial court was without jurisdiction for the reason that the necessary procedural prerequisites were not observed. The proposed purchase of the utility property by the city was initiated by petition to the municipal council, signed by more than five per cent of the voters of the municipality, pursuant to the provisions of section 18, chapter 190, Acts of 1933, section 54-612 Burns 1933, sec. 14029 Baldwin's 1934. Said section provides, in part, as follows:

"Whenever five (5) per cent or more of the voters of any municipality of this state, as shown by the total vote cast for all candidates for municipal clerk at the last preceding municipal election therefor shall file a written petition with the municipal council thereof requesting such council to purchase any utility then operating within such municipality or to lease, erect, establish, construct, hold and/or operate a utility, it shall be the duty of such municipal council to order such election and to proceed as follows:

". . . If said petition is to purchase or condemn the property of an existing public utility, and a majority of the votes cast at such election on said proposal shall vote in favor of such proposal, then such municipal council shall adopt an ordinance declaring a necessity therefor and providing for the condemnation or purchase of such utility, as the case may be, and shall determine the fair and rea-

sonable value of the property of such utility which it desires to acquire and submit the same to the officers of such utility.

"In the event such municipal council and the owners of such utility are unable to agree upon a price to be paid by such municipality for such utility, such municipality shall by ordinance, if it is so determined, declare that a public necessity exists for the condemnation of the property . . ."

The petition was as follows:

"We, the undersigned residents and voters in city of Boonville, Warrick County, Indiana, hereby petition your honorable body to purchase the utility property of Southern Indiana Gas and Electric Company used and useful in furnishing electric utility service to the city of Boonville and to consumers in Boonville and the territory adjacent thereto."

Appellants claim that the petition does not meet the requirements of the statute; that it merely requests the municipality "to purchase" the utility property; and does not authorize the present proceeding to condemn by the exercise of the power of eminent domain. It is to be noted that the portion of the statute relating to the petition is in the alternative, and that it purports to authorize a petition to purchase, "or to lease, erect, establish, construct, hold and/or operate a utility."

Our Public Service Commission Act, as originally conceived, was modeled after similar legislation in the State of Wisconsin, and the courts, including the Supreme Court of the United States, have seen fit to attach weight to the decisions of the highest court of that state in interpreting and applying our act. *Wabash Valley Elec. Co.* v. *Young* (1933), 287 U. S. 488, 497, 53 S. Ct. 234, 77 L. Ed. 447, 454. In *Wisconsin P. & L. Co.* v. *Public Service Comm.* (1935), 219 Wis. 104, 261 N. W. 711, the Supreme Court of Wisconsin, in considering the use of the words "purchase" and "condemn" in a similar act, observed that both related

to a transaction of the same character, and that it was of no consequence that one or the other term was used to indicate the particular proceeding. There is no contention that, in the instant case, the petition was not signed by the requisite number of voters, or that a majority of the votes cast at the special election did not favor the acquisition of the property. In view of the specific language of the act relating to the subject of the petition, and the decision of the Wisconsin court cited above, we conclude that the petition substantially follows the statute, and that the court below had jurisdiction.

The act under which appellee is proceeding provides that if the municipal council and the owners are unable to agree upon a price to be paid for the utility property, the city may condemn under the general statute relating to eminent domain, which is section 3-1701 Burns 1933 et seq., sec. 14061 et seq. Baldwin's 1934. Section 3-1704 (sec. 14064 Baldwin's 1934), directs that the damages that the owner may sustain on account of any such appropriation, shall be assessed in the first instance by three disinterested freeholders of the county, to be appointed by the court. Appellants say that this procedure does violence to the due process clause of the Federal Constitution, because it arbitrarily authorizes the appraisement to be made by persons without the necessary qualifications, inasmuch as the valuation of such properties requires persons of techncial skill and training in the engineering, administration, and financing of public utilities. Reliance is placed upon *Lone Star Gas Co.* v. *Fort Worth* (1937), 128 Tex. 392, 98 S. W. (2d) 799, 109 A. L. R. 374; *Passaic, etc., Water Co.* v. *McCutcheon* (1929), 105 N. J. L. 437, 144 Atl. 571. While these cases lend credence to appellants' contentions, we do not consider them controlling, in view of the many respects in which

the Texas and New Jersey statutes differ from ours. It is to be noted that by the terms of our Eminent Domain Act any party aggrieved by the assessment of damages by the appraisers may file written exceptions thereto in the office of the clerk, whereupon the court shall try the issue as in civil actions and render such finding and judgment as to it may seem just. There is also the right of appeal to the Appellate Court, or to this court, as in civil actions. §3-1707 Burns 1933, sec. 14068 Baldwin's 1934, *supra.* In determining if the requirements of due process are met, the remedies provided must be considered as a whole, and it is not proper to apply the tests to the isolated parts relating only to the initial appraisement. The provisions that the three appraisers shall be disinterested freeholders are minimum qualifications, and we would not be warranted in assuming, in the absence of some showing of fact, that the court had appointed, or might appoint, persons to discharge that duty who were otherwise unqualified or incompetent. It would be a rash assumption to say, as has been suggested, that there are not in any county in this state three disinterested freeholders possessing the requisite knowledge and judgment to qualify them to fairly appraise utility properties. The guaranty of due process should not be carried so far as to preclude the possibility of there being some tribunal competent to determine the matters involved. When a statute, such as we have, makes provision for a determination of value by three disinterested freeholders of the county, followed by a trial of the issue by a court of general jurisdiction, at the election of the party aggrieved, with the right of ultimate appeal to the highest court of the state, the requirements for due process of law are discharged.

Appellants assert that the taking of their property in the manner contemplated will amount to an impairment of the obligation of a contract, in violation of section 10

of Article 1 of the Constitution of the United States. In support of this contention it is shown that appellant Southern Indiana Gas and Electric Company obtained a franchise to operate the utility now sought to be acquired by the city on February 18, 1904, and that it held such franchise until June 30, 1923, when it surrendered the same and accepted in lieu thereof an indeterminate permit; that at the time the franchise was surrendered and the indeterminate permit accepted, the Public Utilities Act of 1913 was in effect, which act provided that a utility surrendering its franchise and accepting an indeterminate permit, might be compelled to sell its property to the municipality only upon the conditions that the necessity of purchase should be determined by the circuit or superior court of the county, and that the compensation to be paid should be fixed by the Public Service Commission of Indiana. Appellants call attention to the fact that by the act of 1933, under which appellee is proceeding, the necessity of purchase is determined by the municipal council, instead of the court, and the compensation to be paid is fixed by three disinterested freeholders, instead of the Public Service Commission. Upon this showing of facts, appellants predicate their claim that the contract created by the surrender of their franchise has been impaired.

In *City of Lebanon* v. *Public Service Co. of Indiana* (1938), 214 Ind. 295, 14 N. E. (2d) 719, in which appeal was dismissed by the United States Supreme Court on October 10, 1938, this court said upon the subject now under consideration (p. 304):

"The Legislature in 1933 . . . changed the procedure and authorized the municipality to condemn the property under the Eminent Domain Act of 1905. . . . A study of these statutes discloses that the 1933 act did not create in the municipality a new or additional authority to condemn a privately-

owned public utility. It changed the method of acquisition by taking the proceeding from the Public Service Commission and placing it under the Eminent Domain Act, where the questions involved can be passed upon by a court instead of a commission."

The basis of the authority of the state to provide for the forced taking of utility property by the municipality, whether under the act of 1933, the act of 1913, or the act of 1905 was the same, namely, the doctrine of eminent domain. The law recognizes no other justification for the forcible taking of private property for public use. The power of eminent domain is an attribute of sovereignty and inures in every independent state. It cannot be surrendered, and, if attempted to be contracted away, it may be resumed at will. It is superior to all property rights, and extends to all property within the jurisdiction of the state. Every contract, whether made between the state and an individual, or between individuals only, must yield to it whenever necessity for its exercise shall occur. Every contract is made in subordination to it. The existence of this power must be presumed to be known and recognized by all, and need never be carried into express stipulations, for this would add nothing to its force. *West River Bridge Co.* v. *Dix* (1848), 6 How. (47 U. S.) 507, 12 L. Ed. 535; *Georgia* v. *City of Chattanooga et al.* (1924), 264 U. S. 472, 44 S. Ct. 369, 68 L. Ed. 796. The obligation of the contract created by the surrender of the franchise and the acceptance of the indeterminate permit has not been impaired by the change in the statutory provisions with reference to the manner of determining the necessity of acquiring appellant's property, or by the modification of the method of ascertaining its value for that purpose.

The claim that the appellee cannot condemn appellants' electric light system without acquiring, also, its

hot water heating plant, operated in connection therewith, is refuted by the decision of this court in the case of *Public Service Co. of Indiana* v. *City of Aurora* (1939), ante 311, 19 N. E. (2d) 255.

It is true, as appellants suggest, that after entry of the interlocutory judgment that the city has the right to condemn, or after judgment by the trial court as to compensation to be paid, or both, the city may, on payment to the clerk, take possession of the property pending an appeal. It is likewise true that after final judgment, the city may abandon the proceedings and relinquish possession of the property. If, under a practical application of the statute, these contingencies can arise, or if the city has not avoided the possibility thereof by the adoption of an ordinance introduced in evidence, by which it waived the right to take possession of the property before final determination of the proceedings, it does not follow that appellants can be deprived of their property without due process of law. They are fully protected under section 1 of the Fourteenth Amendment to the Constitution of the United States. This provision, to the effect that private property shall not be taken for public use without just compensation, is self-executing and cannot be annulled for non-action. *People* v. *Kingery* (1938), 369 Ill. 289, 16 N. E. (2d) 761. While the statute provides that no general liability can be incurred and no funds used for such condemnation, except those derived from the pledge of the public utility property or its earnings, this would not protect the municipality from its common law liability to make good any damage that might inure, should it take possession and then ultimately conclude not to buy. *Jacobs* v. *United States* (1933), 290 U. S. 13, 54 S. Ct. 26, 78 L. Ed. 142; *State* v. *O'Malley* (1938), 343 Mo. 658, 122 S. W. (2d) 940.

Finally, appellants present the proposition that the

act of 1933 constitutes legislative coercion and denies due process of law because it authorizes the city to pay to the clerk the value of utility property as determined by the appraisers and take possession pending the final appeal. As indicating the risk involved, attention is called to the fact that the city has offered $205,000 for this property, and that the clerk's official bond is only $10,000. Under these circumstances appellants say they would be subjected to the possible loss of the deposited fund in the event of the defalcation of the clerk, or failure of his depository, after having been deprived of their property and while seeking to avail themselves of the right of a judicial review. It would seem to be an unwarranted assumption to invoke the rule of due process upon the hypothesis that a public officer may embezzle the funds with which he may be charged, or that his depository may fail. Carried to such an extreme, the exigencies of conduct and existence might thus defeat every human undertaking. Courts will presume that public officers will do their duties and that public functions will be performed.

The judgment is affirmed.