CHADWICK, TREASURER, ET AL. *v.* CITY OF CRAWFORDSVILLE

[No. 27,275. Filed January 29, 1940.]

400

402

*John B. Newlin*, of Crawfordsville; and *Harvey B. Hartsock, Charles M. Wells* and *J. D. Wright*, all of Indianapolis, for appellants.

*Raymond O. Evans*, of Crawfordsville, for appellee.

FANSLER, J.—The appellee sued to enjoin the appellant treasurer from collecting taxes for the year 1938 and subsequent years upon that part of the appellee's municipal electric light plant and distribution system devoted to the manufacture and sale of electricity for commercial and domestic use. The appellant Thomas, a taxpayer, intervened by leave of court as a defendant.

The complaint is based on chapter 15 of the Acts of 1939 (Acts 1939, p. 24), § 64-221, Burns' 1933 (Supp.), § 15518-5, Baldwin's Supp., 1939, which provides: "That every city and town in the State of Indiana shall be exempt from any and all taxes, either real or personal, on properties or services and income therefrom, for any purpose whatsoever, on its public schools, public libraries, on its municipally owned parks, golf courses, playgrounds, swimming pools, hospitals, waterworks, electric utility, gas and heating plants, sewage treatment and disposal plants, cemeteries, auditoriums, gymnasiums, and any and all other municipally owned

property, utility or institution: Provided, however, That this act shall not exempt any city or town from the requirement to pay the tax upon its gross receipts under the Gross Income Tax Law." Section 2 repeals all laws in conflict therewith, and section 3 is an emergency clause providing that the act shall be in full force and effect from and after its passage. The act was approved February 23, 1939. The defendants demurred to the complaint for want of facts. It is asserted in the memoranda that the complaint is based solely upon the statute above referred to; that the statute contravenes Article 10, Section 1, of the Constitution of Indiana; and that the act is not retroactive. The demurrers were overruled, the defendants declined to plead further, and there was judgment as prayed.

Error is predicated upon the overruling of the demurrers.

Article 10, Section 1, of the Constitution of Indiana, provides: "The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specially exempted by law." It was early held that the purpose for which property is used is controlling, and that property owned by a private individual operating an educational institution for his private profit may be exempted under the Constitution. *City of Indianapolis* v. *Sturdevant* (1865), 24 Ind. 391. This case has been cited with approval repeatedly, and was followed in *Vink, Treasurer,* v. *Work* (1902), 158 Ind. 638, 64 N. E. 83. In *Travelers' Insurance Co.* v. *Kent et al.* (1898), 151 Ind. 349, 50 N. E. 562, 51 N. E. 723, it

was held that the lands of a private owner used and occupied by a lessee for school purposes are not exempt, and the reasoning was followed in *Spohn* v. *Stark, Treasurer, et al.* (1926), 197 Ind. 299, 150 N. E. 787, where it was held that property rented to the Indiana National Guard for armory purposes, and used for such purposes, is not exempt from taxation.

In *City of Crawfordsville et al.* v. *Braden* (1892), 130 Ind. 149, 159, 28 N. E. 849, 852, it was held that municipal corporations have the power to safeguard and protect health and property; that they have power to light the streets and public places, and to construct and own plants for the purpose of generating electricity for that purpose; that there is a public interest in furnishing power for electric lights to private consumers; and that: "To do so is, in our opinion, a legitimate exercise of the police power for the preservation of property and health. . . . . A light thus produced is safer to property, and more conducive to health than the ordinary light. Produced by the heating of a filament of carbon to the point of incandescence in a vacuum, there is nothing to set property on fire, or to consume the oxygen in the surrounding air, and thus render it less capable of sustaining life and preserving health." The same public purpose has been found in the furnishing of pure water for private use from a municipally-owned and operated waterworks plant.

The Constitution permits the exemption of property "for municipal, educational, literary, scientific, religious, or charitable purposes." The word "municipal," in the narrower sense, means pertaining to a local governmental unit, commonly, a city or town. In its broader sense it means pertaining to the public or governmental affairs of a state or nation

or of a people. In one sense the term "municipal purposes" is broad enough to cover any purpose which government may achieve, while in the narrower sense the term may refer only to cities and towns and such other local governmental agencies as may be established for special purposes. For a discussion of the various meanings, see *Root* v. *Erdelmeyer, Treasurer, et al.* (1872), 37 Ind. 225, and *City of Louisville et al.* v. *Babb, County Treasurer* (1935), 75 Fed. (2d), 162. It is clear that this court and courts generally have viewed the operation of an electric plant by a city for the furnishing of lights and power for its own use and the use of its inhabitants as an exercise of the police power. If this is the purpose, it is a governmental purpose that is served under a power generally vested in cities and towns, and therefore a municipal purpose under either the broad or the more restricted meaning of the word "municipal," and it must be concluded that the exemption of property for such a use is within the constitutional provision. It is true that when the opinion in the Crawfordsville case was written, the court and the public generally thought of electricity as useful principally for lighting, and that now probably its predominant use is for power. Much of this power is used for domestic purposes, however, which are as conducive to public health, cleanliness, and safety as the use of modern lighting. It is also used commercially to furnish power in factories. This avoids the necessity for the operation of a multitude of private power plants, with the possibility of incidental smoke and soot and greater fire hazard, so that even in this use a public purpose within the police power can be seen. It is also probably true, although it does not appear in the record, that electric current is furnished to consumers outside of the city which owns and

operates the plant. The public duty to protect the health and welfare of the citizen outside of the limits of cities rests primarily upon the Legislature, and in exempting these plants from taxation, regardless of the extent of their operations, the Legislature doubtless found a public interest in the protection and welfare of the citizens of the state.

The record of the Constitutional Debates discloses that the member of the Convention who introduced Section 1 of Article 10 in the form in which it ▇▇▇ was adopted, thought of the word "municipal" as referring to "the property of municipal corporations." He said: "I have prepared these sections with some degree of care, and I think they will meet the object intended. According to the provisions contained in them, all the property of the State, whether belonging to individuals or to corporations, must be taxed—with what exception only? Why, school houses, churches, the property of municipal corporations, and property devoted to benevolent or eleemosynary purposes, so far as the Legislature may see fit to exempt such property." Debates in Indiana Convention, 1850, Vol. 1, pp. 941, 942. It is noted that the provision of the Constitution says that property may be exempted for "municipal purposes," and that the member proposing it construed the clause as meaning that "the property of municipal corporations" might be exempted. The constitutional provision for exemption is based on the purpose for which property is used, while the proposing member seems to construe it as providing for an exemption because of ownership. All property of cities and towns was not exempted at first, but after a short time statutes were enacted exempting all such property, and such has been the law until the Act of 1933 (Acts 1933, ch. 190, § 16, p. 928, § 54-610, Burns'

1933, § 14027, Baldwin's 1934), which taxed that part of public utility plants owned by cities which was used for the purpose of selling service to private persons. See *Borgman, Treasurer, et al.* v. *City of Fort Wayne* (1939), 215 Ind. 201, 18 N. E. (2d) 762. The Act of 1933 is the only act repealed by the repealing clause of the statute here in question to which our attention has been called. We know of no case in which the legislative authority to exempt such property was questioned. In *Lowe* v. *Board of Com'rs of Howard County* (1884), 94 Ind. 553, 555, this court expressed the view that: "Lands held by public corporations for public purposes are exempt from taxation," and that such exemption "well comports with our Constitution and our statutes, which everywhere evince an intention to relieve from taxes and assessments property owned by the public . . . ." Thus the Legislature early construed the Constitution as authorizing it to exempt from taxation the property of cities and towns, the public has long acquiesced in this interpretation, and this court by the dictum above quoted concurred. But the constitutional provision as submitted to the people does not say that the property of municipal corporations may be exempted; it says that property may be exempted for "municipal purposes." In construing the language of the Constitution we seek the meaning intended by those who adopted it, and not by those who drafted it, and, ordinarily, words are treated as used in their ordinary sense. But where there is doubt or ambiguity, we look to the Constitutional Debates and to contemporary construction, both official and popular, for light. It is probably true that to the average person the word "municipal" suggests a city, town, village, or other governmental agency or entity, and no doubt most of those who voted for the adoption of the Constitution

so interpreted the word. This is not difficult to believe in the light of the interpretation put upon it by the Legislature and the courts, and the drafter of the provision, who said: "I have prepared these sections with some degree of care." A careful examination of the language of the provision discloses some basis for such an interpretation in the provision itself. ·

To maintain educational and charitable institutions is clearly within the powers and purposes and ordinary practices of all government, including cities and towns, and therefore if the term "municipal purposes" was used in the broader sense, and if it was intended to refer solely to the purposes for which property was used, it is broad enough to cover and include the words, "educational," "literary," and "charitable," and those words would be mere surplusage. The authorities agree that the words used in the Constitution must be presumed to have been carefully chosen so that each word would have a meaning. It has been said that each word must be thought of as having been deliberately selected and intentionally placed as though it had been hammered into the instrument. Each word therefore must be given effect, and, since the words, "educational," "literary," and "charitable," were deliberately used, it is reasonable to conclude that the word "municipal" was not intended to be construed as including the same subject-matter, and it must have been used in the narrower sense, as referring to cities, towns, or other governmental units. Thus construed it is found to permit the exemption from taxation of property used for the purposes of cities, towns, or other governmental units. This construction conforms to the legislative, and popular and official interpretation long acquiesced in, and the authorities agree that such interpretation is entitled

to weight and consideration in construing doubtful constitutional provisions. We construe the constitutional provision to mean that the Legislature may exempt from taxation property used for educational, literary, scientific, religious, or charitable purposes, and the purposes of municipal corporations. Since municipal corporations are authorized and designed to serve public purposes only, any property which they may acquire in the exercise of their powers to accomplish such purposes, or as an incident thereto, may lawfully be exempted from taxation.

It does not follow that we disapprove of the result reached in *City of Louisville et al.* v. *Babb, County Treasurer, supra.* The facts in that case were that the Federal government had authorized the city of Louisville to build a bridge across the Ohio River, connecting the city of Louisville and the city of Jeffersonville in this state. The Legislature of Kentucky had authorized the incorporation of the Louisville Bridge Commission for the purpose of constructing, operating, and repairing the bridge. The Commission came into existence and built the bridge. The real estate upon which the bridge, office building, toll houses, etc., are located was taken in the name of the city of Louisville. Part of this property was located in the state of Indiana. Bonds were issued to pay for the construction. It was opened to the public. The bridge was not built for profit, but tolls were to provide sufficient income to maintain, operate, and repair the bridge and to provide a sinking fund sufficient to pay the bonds and interest thereon as they mature. The Commission was to operate the bridge until the bonded indebtedness was fully paid, at which time the Commission was to cease functioning, and the city of Louisville was to assume the operation of the bridge, with the privilege of col-

lecting tolls to cover the cost of maintenance, operation, and repair.

The Legislature of Indiana enacted a statute (Acts 1929, ch. 94, p. 296, § 64-202, Burns' 1933, § 15522, Baldwin's 1934) exempting from taxation any bridge constructed across a navigable stream forming a boundary of this state, and the appurtenances thereto, when owned by the state of Indiana or by any municipality or political subdivision thereof, or by another state or by any municipality or political subdivision of such other state, if such bridge be free of tolls except such as are necessary to pay for the cost, maintenance, repair, and operation of the bridge.

The bridge property was not for private profit. It was devoted to a public use and became and was used as a part of the highway system of Indiana. The bridge was devoted to a municipal purpose. Cities, towns, and other municipal agencies have always had authority to maintain highways and bridges, and it cannot be doubted that they serve a public or municipal purpose and that they are necessary to the welfare of the community. The constitutional provision does not limit the exemption to municipalities authorized or established by the Legislature of this state, and, since the bridge in question serves a public purpose within this state, and is owned and operated, not privately, but by a municipal corporation of another state, for the benefit of the public of both states, no constitutional reason can be seen for denying legislative power to exempt it from taxation. It is within the purpose and spirit of the constitutional provision and does not violate its letter.

The word "municipality" is not limited in its meaning to cities and towns. It is said by McQuillin on Municipal Corporations, 2d Ed., Vol. 1, § 134, that, in the

absence of constitutional limitation, the State Legislature may create any kind of a corporation to aid in the administration of public affairs. Attention is called to many such in addition to cities, towns, and villages. In *Edwards et al.* v. *Housing Authority of City of Muncie et al.* (1939), 215 Ind. 330, 19 N. E. (2d) 741, 744, this court said: "From time to time boards and commissions have been created and authorized and vested with authority to carry out projects for the protection of the public. The name given to such an instrumentality is of no significance, nor do we find any limit upon the character or number of public corporations or bodies politic, which the Legislature may authorize or create to accomplish such purposes." It was said of the Housing Authority projects: "They are as public in character as drainage, levee, sanitary, or highway projects, the property and bonds of which are properly exempted from taxation." It would seem immaterial whether the Legislature establishes the agency or adopts one already in existence, especially where enterprises overlapping the state boundaries are involved.

The appellants cite many cases in which this court has said that, in the operation of a public utility, the city acts in its private and proprietary capacity. But this is so only to a limited extent. When a municipality has been clothed with powers for the peculiar and special advantages of its inhabitants, rather than for the good of the state at large, the corporation has a private character, and its liability for torts and otherwise is based upon the same principles as that of a private corporation, and a municipality may have property rights which are so far private that they are not held at the pleasure of the Legislature. It is only in respect to such matters that the city is

spoken of as acting in a private or proprietary capacity. Judge Dillon says: "But that a municipal corporation is in any just view a *private* corporation, or possesses a double character, the one private and the other public, although often asserted, is only true in a modified sense. In their nature and purposes, municipal corporations, however numerous and complex their powers and functions, are essentially public." Dillon on Municipal Corporations, 5th Ed. Vol. 1, § 38, p. 68. In respect to their public utility properties the rights and duties of a municipality are generally measured by the same rules and the same standards which apply to private individuals or private corporations, and this has led to the repeated statement that they hold their public utility properties in a private or proprietary capacity. But the same courts that use such language uniformly hold that, in the operation of such properties, the municipalities perform a public function under the police power, and not a private function.

The statute under consideration in *Borgman, Treasurer, et al.* v. *City of Fort Wayne, supra,* exempted from taxation only municipally-owned utilities operated exclusively for furnishing service to the municipality itself, or that portion of such a utility which was so used. It was held in that case that utility property used for other purposes might be taxed, but it was not held that it might not be expressly exempted, since that question was not before the court.

It is also contended that the statute was not intended to relieve the city from liability for taxes levied on March 1, 1938, and due and payable in May, 1939; that the repeal of a statute levying a tax does not affect taxes which are already a lien.

Unless a contrary intention is expressed, statutes are treated as intended to operate prospectively, and

not retrospectively. Section 1-307, Burns' 1933, 18-20. § 13, Baldwin's 1934, changed the common-law rule, and provides that: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide; and such statute shall be treated as still remaining in force for the purposes of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability." The statute in question is more than a repealing statute; it provides: "That every city and town in the state of Indiana shall be exempt from any and all taxes . . . ." There is no limitation upon the exemption. It does not say "heretofore levied" or "to be hereafter levied." The Legislature undoubtedly had the power to exempt the municipality from the payment of taxes already levied or assessed but unpaid. But it must be noted that the act carried an emergency clause which made it effective after passage, and that it was approved on the 23rd day of February, 1939. Taxes become effective as of the first day of March of each year. If it had been intended that municipalities were to be free from liability for taxes which had already become effective, there would have been no necessity for the emergency clause which made the act effective prior to the first day of March. The taxes for 1938, or the first installment thereof, were required to be paid not later than the first Monday of May to avoid delinquency. It is a matter of common knowledge that such payments are often made at an earlier date, and it might well be supposed that some cities might have paid their 1938 taxes prior to the time the act in question went into effect on February 23, 1939, and yet there is no provision for the reimbursement of such cities. A sense

of equality and fairness would have suggested that if cities were to be relieved of the taxes already accrued there would be some provision for the reimbursement of those that might have paid. In view of these considerations, it has been concluded that, notwithstanding the general words of the statute, it must be construed as having been intended to operate prospectively only, and not intended to relieve municipalities from liability for taxes already assessed.

What we have said leads to the conclusion that the statute in question is constitutional, but that it is not retroactive; that therefore the taxes for the year 1938 were legally levied and should not have been enjoined, but that there is no legal basis for the levy of taxes for subsequent years.

The complaint is in one paragraph. It seeks an injunction against the collection of taxes for the year 1938 and all subsequent years. The plaintiff might have separated his complaint into paragraphs, but he did not choose to do so, but treated all of the assessments of taxes as involving a single transaction. The defendants might have moved to separate the complaint into paragraphs, but they chose to file identical demurrers for want of facts to the complaint in one paragraph. By memorandum they assert that the act exempting the property of the municipality from taxes is unconstitutional, and that the act is not retroactive; in other words, that if the act is constitutional it is not retroactive so as to bar the collection of the taxes assessed for 1938. We have concluded that the first objection to the complaint was not well taken, since the act is constitutional, but that the second objection was well taken, since the act is not retroactive.

The appellee contends that, since the complaint states a cause of action as to the taxes for the year 1939 and

subsequent years, the demurrers were properly overruled, notwithstanding a good cause of action was not stated concerning the taxes for 1938; that the complaint justifies a judgment enjoining the taxes for 1939 and subsequent years; and that, although the judgment enjoins the taxes for 1938 also, there was no motion to modify; and that the judgment cannot be corrected even though it is erroneous. The rule suggested is generally applicable and might furnish a technical obstacle to the correction of an obviously erroneous judgment except for another well-known equitable rule which governs actions to enjoin taxes. "No principle of the law of injunctions is more firmly established than that requiring a taxpayer who seeks the aid of an injunction against the enforcement or collection of a tax, to first pay or tender the amount which is conceded to be legally and properly due." High on Injunctions, 4th Ed. Vol. 1, § 497, p. 467; *Wilt et al.* v. *Bueter, Treasurer, et al.* (1917), 186 Ind. 98, 111 N. E. 926, 115 N. E. 49, and cases cited. In the same section (p. 469) it is said: "And an allegation that complainant has paid all taxes which he is legally liable to pay is not sufficient within the meaning of the rule, since it is only an averment of a legal conclusion and not of a fact. The bill should therefore, in all cases allege the facts and particulars which will enable the court to determine whether the legal conclusion is warranted by the facts." See, also, *Studabaker* v. *Studabaker et al.* (1899), 152 Ind. 89, 51 N. E. 933. The word "conceded" is thus construed to mean conceded by the facts alleged in the complaint. A complaint which alleges facts showing that some taxes are due is bad upon demurrer, notwithstanding the contention of the plaintiff that, under the facts alleged, there are no taxes due. The court must determine, and the

court's conclusion upon examination of the facts will control, and not the conclusion of the pleader or his failure to concede that which appears from the facts alleged.

Under chancery practice, where it appears from the bill that a part of the tax sought to be enjoined is due, the bill would be dismissed without prejudice so that the amount due may be paid or tendered. Under our practice, the demurrer should be sustained, with leave to amend showing payment or tender of the amount due.

It was error to overrule the demurrers. *Loesnitz* v. *Seelinger, Treasurer, et al.* (1891), 127 Ind. 422, 25 N. E. 1037, 26 N. E. 887.

The judgment is reversed, with instructions to sustain the demurrers, with leave to amend. There is no question of fact involved. If, by amendment, it shall appear that the plaintiff has paid or tendered the taxes for 1938, the proceedings should result in a judgment enjoining the collection of taxes for subsequent years.

Note—Reported in 24 N. E. (2d) 937.