SOUTHERN INDIANA GAS & ELECTRIC CO. *v.* CITY
OF BOONVILLE.

[No. 1068-S-170. Filed June 24, 1969. Rehearing denied August 25, 1969.]

*Fred P. Bamberger,* Evansville, *Bamberger, Foreman, Oswald & Hahn,* of counsel, Evansville for appellant.

*George B. Gavit,* Indianapolis, *Donald G. Hendrickson,* Boonville, *Ice Miller Donadio & Ryan,* of counsel, Indianapolis, for appellee.

ARTERBURN, J.—Appellee, City of Boonville, as plaintiff, filed a complaint for condemnation of a certain electrical transmission system owned by the appellant company which was located in two subdivisions of the City of Boonville, known as Mac-Ray Acres and East Gate Park, which the City of Boonville had recently annexed. The complaint alleged that the city operated a municipal electric utility in the City of Boonville and desired to exercise the right of eminent domain to acquire the transmission lines in the newly annexed subdivisions.

The complaint further alleged that the appellee had made a good-faith effort to purchase the property from the appellant but was not able to agree on the price which was offered, to-wit: $50.00. It was conceded that the $50.00 only paid for the tangible lines and poles involved, and in no way compensated the electric company for contractual and other rights involved.

The evidence involved shows that at the time this litigation began, the City of Boonville was purchasing its electric energy from the appellant electric company. At that time there was in existence and had been for a number of years a contract under which this energy was supplied for utility purposes in the City of Boonville. As part of that 1947 contract, which was reaffirmed in 1959 and extended to May 31, 1974, the City of Boonville agreed not to extend its services beyond the then city limits of Boonville. The agreement was again supplemented and reaffirmed in 1965. This original contract and the subsequent renewals and amendments were approved by the Common Council of the City of Boonville and also by the Public Service Commission.

At the time of the beginning of this litigation the appellant electric company provided the only electrical service to the homes and businesses in the two subdivisions by virtue of a certificate of public convenience and necessity issued by the Public Service Commission. Following an annexation of the subdivisions, the City of Boonville took steps to provide electrical services to the two subdivisions, and the appellant electric company thereupon secured a temporary injunction prohibiting the appellee from servicing such annexed area, based upon its contract with the city, which provided for such a division of territory.

The appellee then requested an interpretation of the temporary injunction from the trial court to determine whether the appellee-city was prohibited from bringing a condemnation action against the appellant. The court held that

the temporary injunction did not prohibit the bringing of a condemnation action, which the city thereupon brought, and the rulings in such proceeding are now being appealed for our consideration.

Objections were filed to the complaint, based primarily upon the contentions that a good-faith effort was not made to negotiate a fair price, that the damages did not take into consideration values other than the mere worth of the poles and lines and that appellee-city should not be permitted to violate its contract made in good faith with reference to an agreeable division of territory to be served after improvements were made by both parties, based upon the contract, with the city still retaining certain benefits under the contract with reference to the furnishing of electrical energy.

The central issue in this appeal is the validity of the provision in the original contract for the furnishing of electrical energy, which was reaffirmed in 1965. The essential part of that contract, other than that concerning the furnishing of electrical energy by appellant to the City of Boonville for its use in serving its customers, provided:

> "That it [City of Boonville] will sell electricity only to its customers residing within the city limits of Boonville, Indiana, as said city limits existed on June 6, 1941, and to those customers who are located on what is known as the 'Lake Drain Line' and to Mary Johnson, J. L. Petrey, J. D. Burton and the Fair Grounds Association; and that it will not extend its service to any other customers or territory without the written consent of the Company and without first obtaining legal authority to do so." (Parenthesis added).

If this provision is valid and the city is bound by the contract, then it is apparent appellee cannot condemn appellant's property in this proceeding, except in violation of its contractual obligations.

Appellee argues that the contractual provision is invalid because the city, in effect, contracts away its power of eminent

domain. It cites the case of *Southern Indiana Gas & Electric Co. v. City of Boonville* (1939), 215 Ind. 552, 20 N. E. 2d 648. Language in that case standing by itself might support the appellee. However, an examination of the facts therein shows that it refers merely to the franchise or indeterminate permit which the state had granted the utility, and not a contract between the two parties, as in this case. In the present case the contract is directly between the city and the utility, and unless there is some public policy involved, the parties are bound by the contractual obligations until the contract expires. The City of Boonville operates the utility in a proprietary and private capacity and not as a part of its sovereign rights.

The delegation of the powers of eminent domain for the operation of a utility is for business purposes, as distinguished from a governmental or a sovereign purpose. The exercise by a municipality of its eminent domain powers in connection with its utility operations therefore involved a proprietary or a businesslike decision. It is simply a business operation. In *The City of Vincennes v. The Citizens' Gas Light Company* (1892), 132 Ind. 114, 126, 31 N. E. 573, it is said:

"There is a distinction between powers of a legislative character and powers of a business nature. The power to execute a contract for goods, for houses, for gas, for water and the like, is neither a judicial nor a legislative power, but is a purely business power. . . ."

Also, in *The City of Indianapolis v. The Indianapolis Gas-Light & Coke Company* (1879), 66 Ind. 396, 407, our Court said:

". . . When it (a municipal corporation) makes a contract within the scope of its power . . ., it must be enforced the same as the contract of a business corporation, or a person. . . ." (parenthesis added).

In the case of *Public Service Co. of Ind. v. City of Newcastle* (1937), 212 Ind. 229, 237, 8 N. E. 2d 821, this Court stated:

"It is well settled that, when furnishing electric energy to light its streets, buildings, and public places, the city is exercising a governmental function, but that, when it furnishes and sells energy for domestic and commercial purposes, it acts as a private business corporation, and, in the latter case, it is subject to the rules governing private corporations."

In the operation of a utility a city is bound in the same fashion as any other owner of a utility, corporate or otherwise, and may contract with reference to the disposition of such property and its operation. *Department of Treasury v. City of Linton* (1945), 223 Ind. 363, 60 N. E. 2d 948; *Chadwick, Treasurer v. City of Crawfordsville* (1940), 216 Ind. 399, 24 N. E. 2d 937; *Public Service Co. of Ind. v. City of Newcastle, supra; City of Huntington v. Northern Ind. Power Co.* (1937), 211 Ind. 502, 5 N. E. 2d 889; *City of Logansport v. Public Service Comm.* (1931), 202 Ind. 523, 177 N. E. 249.

It follows that a utility, including one operated by the city, may make a contract which prevents it from thereafter taking property by use of its power of eminent domain. It has not lost the right to exercise the power of eminent domain, but has made a contract which prevents it from succeeding in such a case if it should bring an action of eminent domain. In this case the Court has issued a temporary injunction which stamps with approval the contract between the parties as binding. At the same time it interpreted the injunction as not prohibiting the bringing of the condemnation action, but it did not state that the appellee-city was entitled to succeed in such proceeding.

In this case the City of Boonville, as part of its contract with the appellant, entered into an agreement for the furnishing of electrical energey for the operation of its utility, and at the same time agreed upon drawing a line between the territory to be served by the appellant and the city. We know of no public policy that prevents

such an agreement. In fact, efficiency and economy would favor such agreements as avoiding duplication of equipment, etc. In considering this question of division of territory between utilities, McQuillin, *Municipal Corporations*, 2nd Ed., Revised Vol. 5, Sec. 1931, at p. 39, says in part:

> "It was held that the municipality, in granting a franchise to a water company, could agree not to compete during the period of the contract, notwithstanding it could not grant an exclusive franchise. . . ." *City of Walla Walla et al. v. Walla Walla Water Co.* (1898), 172 U.S. 1, 43 L.Ed. 341, 19 S. Ct. 77; *City Gas Company v. People's Gas System, Inc.* (Fla., 1965), 182 So.2d 429.

The contract in question did not purport to grant an exclusive franchise and the contract was approved by the Public Service Commission.

The City of Boonville now seeks to abrogate a part of the contract; that part which it finds undesirable. The court in issuing the temporary injunction, has recognized the validity of the contract between the parties. If the City of Boonville should be successful in taking over merely the lines and poles in this case, could it, in the face of a temporary injunction or a permanent injunction, serve the territory involved? Would the possession of the mere poles and wire be a grant of power to operate a public utility service? It is unnecessary to answer this question, since in our opinion the City of Boonville is bound by its contract made in good faith in operating a utility as a proprietor. Once appellee engaged in a public utility business, it became bound by its business decisions, the same as any other utility.

The judgment and order of the trial court is reversed, with directions to sustain the objections to the complaint, based upon the validity of the contract between the parties herein referred to.

Hunter, Jackson and Givan, JJ., concur. DeBruler, C. J., dissents with opinion.

DISSENTING OPINION

DEBRULER, C. J.—This case was commenced in the Warrick Circuit Court by the appellee, on August 10, 1965,. by the filing of a complaint for condemnation.

The trial court thereafter overruled objections filed by the appellant to this complaint for condemnation, orderd that the appellee was entitled to take the appellant's property described in the complaint and appointed appraisers. From this ruling and order the appellant appeals.

The property sought to be condemned by the appellee was described as follows in the complaint:

> "4. The property sought to be condemned by plaintiff is the defendant's electric utility property located in the City of Boonville, Indiana within the subdivisions identified as Mac-Ray Acres and East Gate Park, used and useful in furnishing electric service to consumers, *including all intangible rights or interests in the furnishing of electric utility service in said subdivisions, if any.*" (Emphasis added.)

The appellant objected to this proposal to take upon thirty-four grounds which included:

First, it is conceded by both parties that the electric supply system which appellee desires to condemn serves an area presently located within the Boonville city limits, but which was outside the city limits as they existed on June 6, 1941, and there exists a contract between the appellant and appellee which contains the following provisions:

> "That it [City of Boonville] will sell electricity only to its customers residing within the city limits of Boonville, Indiana, as said city limits existed on June 6, 1941,. and to those customers who are located on what is known as the 'Lake Drain Line' and to Mary Johnson, J. L. Petrey, J. D. Burton and the Fair Grounds Association; and that it will not extend its service to any other customers or territory without the written consent of the Company and without first obtaining legal authority to do so" (parenthesis added).

And second, there exists a temporary injunction ordered February 19, 1965, in a different case between these same parties in the Warrick Circuit Court restraining the appellee from furnishing electrical energy to the area where the subject supply system is located, which order first appeared in the following form:

"IT IS THEREFORE CONSIDERED, ADJUDGED AND ORDERED by the Court that the defendants, and each of them, and their officers, agents, servants and employees, be and they are hereby enjoined from

(a) breaching the written contract entered into by and between the plaintiff and the defendant, City of Boonville, Indiana, on August 29, 1946, as amended, and

(b) selling and delivering and offering to sell and deliver electric energy to customers located on the distribution line of the defendant, City of Boonville, Indiana, known as the 'Lake Drain Line', who were not customers of said defendant on the 5th day of May, 1959, and

(c) interfering with plaintiff's exclusive right to sell and deliver electric energy to customers located on said 'Lake Drain Line' who were not customers of the defendant, City of Boonville, Indiana, on the 5th day of May, 1959, and

(d) selling and delivering and offering to sell and deliver electric energy to customers and users to whom plaintiff has the exclusive right to sell and to whom defendant, City of Boonville, Indiana, is prohibited from selling by the terms and provisions of said written contract as amended, and

(e) interfering with plaintiff's exclusive right to sell and deliver electric energy to customers and users to whom plaintiff has the exclusive right to sell and to whom defendant, City of Boonville, Indiana, is prohibited from selling pursuant to the terms and provisions of said written contract as amended.

"IT IS FURTHER ORDERED, by the Court that this temporary injunction shall be and remain in full force and effect until the final hearing of this cause or the further order of this Court, provided, that this order shall not

be deemed to affect customers of the defendant City of Boonville presently being served by it as of the date of this order."

The trial court thereafter on July 21, 1965, made the following order in that parallel case:

"The Court finds, orders and adjudges further that the doing, by the defendants and said respondents, of any of the following acts enumerated in petition by the defendants for interpretation of temporary injunction herein do not and will not constitute a violation of said temporary injunction issued and entered of record February 19, 1965, to-wit:

(a) Furnish plaintiff notice of the City's intention to proceed through negotiation, or eminent domain if necessary, to furnish municipal electric service to customers in two subdivisions within the City of Boonville known as Eastgate Park and Mac-Ray Acres.

(b) Consider and adopt, if advisable, a resolution by the Board of Public Works directing such action.

(c) Consider and adopt, if advisable, an ordinance by the Common Council of the City of Boonville directing such action.

(d) Negotiate with the plaintiff toward accomplishing the above without further litigation.

(e) Commence and pursue eminent domain proceedings if the negotiations are not fruitful."

I cannot conclude, as does the majority, that the above quoted provision of the contract is a legal bar to the exercise by the appellee of its power of eminent domain. That power is derived from statute, being Burns' Ind. Stat. Ann. §§ 54-601, 54-602, 48-1902 and 48-7203. It is apparent that the appellee has the power of eminent domain in support of municipal electrical purposes. The said provision of the supply contract does not mention the eminent domain power of the appellee. The appellee did not attempt by this provision to contract away its power to condemn appellant's property for a public use. In addition to the absence of an attempt to

specifically give up its right to exercise eminent domain power, this Court has held in a case between these same parties that any contractual provision attempting to give up the power of eminent domain would not bind the party having the power. In *Southern Indiana Gas & Electric Company v. City of Boonville* (1939), 215 Ind. 552, 20 N. E. 2d 648, this Court said:

> "The power of eminent domain is an attribute of sovereignty and inures in every independent state. It cannot be surrendered, and, if attempted to be contracted away, it may be resumed at will. It is superior to all property rights, and extends to all property within the jurisdiction of the state. Every contract, whether made between the state and an individual, or between individuals only, must yield to it whenever necessity for its exercise shall occur. Every contract is made in subordination to it. The existence of this power must be presumed to be known and recognized by all, and need never be carried into express stipulations, for this would add nothing to its force."

The temporary injunction as modified by the court specifically contemplated the action taken by the appellee in this case and does not constitute a bar to this eminent domain action. Naturally, the appellant is entitled to a full and complete trial on the issue of damages as a result of this take sustained by it.

I would affirm the trial court.

NOTE.—Reported in 248 N. E. 2d 343.