DUBOIS RURAL ELECTRIC COOPERATIVE, INCORPORATED, AN INDIANA CORPORATION v. THE CIVIL CITY OF JASPER, DUBOIS COUNTY, INDIANA, A MUNICIPAL CORPORATION.

[No. 1-575A90. Filed June 9, 1976. Rehearing denied July 19, 1976. Transfer denied January 18, 1977.]

*Zoercher, Becker & Huber,* of Tell City, *Parr, Richey, Obremskey & Morton,* of Lebanon, for appellant.

*Clemence A. Nordhoff,* of Jasper, *Fred P. Bamberger,* of Evansville, for appellee.

LYBROOK, J.—Defendant-appellant Dubois Rural Electric Cooperative, Inc., (REC) brings this interlocutory appeal from the overruling of its objections to plaintiff-appellee City of Jasper's (City) complaint in condemnation. The following issues are presented for review:

(1) Whether City's complaint in condemnation sufficiently describes the property sought to be condemned.

(2) Whether City is barred or estopped from exercising the right of eminent domain over REC's property by virtue of a prior agreement fixing certain territorial boundaries between the parties.

(3) Whether City's right to condemn REC's property has lapsed due to City's alleged failure to timely exercise that right.

(4) Whether City made a good faith offer to purchase.

The record reveals that on April 22, 1958, certain real estate in Dubois County was judicially declared to be annexed to the City of Jasper. This annexation was litigated and eventually resolved in favor of the City of Jasper in the case of *In re Ordinance No. 464 etc.* v. *City of Jasper* (1962), 242 Ind. 475, 179 N.E.2d 749. Also, from the latter part of the 1950's through 1971, various other parcels of real estate in Dubois County were, by ordinance, annexed to the City of Jasper. At all times mentioned above and until March 17, 1972, portions of these areas were being provided electrical utility service by REC. On that day, City filed a complaint seeking to appropriate certain real and personal property of REC used and useful in providing electrical utility service located in the above mentioned annexed territories. City's condemna-

tion action was brought pursuant to Section 18A of the Rural Electric Membership Corporation Act, being IC 1971, 8-1-13-19 (Burns Code Ed.), which provides:

> "Municipality annexing territory served by electric utility — Purchase of Property — Condemnation. — Whenever a municipality in which a public utility (including a corporation organized, or admitted to do business, under this act [8-1-13-1—8-1-13-27]) is rendering electric utility service under a franchise, license or indeterminate permit or in which a mnuicipality [sic]-owned utility is rendering electric utility service, as the case may be (such public or municipal utility being hereinafter called the 'franchised utility'), annexes additional territory and such annexed territory includes any territory in which the franchised utility was not authorized to render electric utility service immediately prior to such annexation but in which some other public utility (including a corporation organized, or admitted to do business, under this act) or municipally-owned utility (such public or municipally owned utility being hereinafter called the 'other utility') was lawfully rendering electric utility service at such time, then the franchised utility and the other utility shall promptly negotiate for the purchase by the franchised utility of the property owned by the other utility within the annexed territory and used and useful by the other utility in or in connection with the rendering of electric utility service therein. In the event that such property has not been purchased by the franchised utility within 90 days after such annexation takes place, then the franchised utility may bring an action in the circuit or superior court of the county where such municipality (or the major part thereof in area) is located against the other utility, as defendant, for the condemnation of such property of the other utility. Until and unless such purchase or condemnation is effected, the other utility shall have authority to operate within the portion of the annexed territory in which it was lawfully rendering electric utility service immediately prior to such annexation."

REC timely filed objections to City's complaint. Following hearing, the objections were overruled, the property sought was ordered condemned and court appointed appraisers were selected. From the overruling of its objections, REC filed an assignment of errors and initiated this interlocutory appeal.

## I.

We first address REC's argument that the complaint fails to sufficiently describe the property sought to be condemned.

City's complaint initially describes the annexed territories in which the property sought to be condemned is located and alleges that REC was lawfully providing electric utility service in portions of the annexed territories. It is further alleged that City has attempted to negotiate with REC for the purchase of property owned by REC within the annexed areas used and useful by REC in providing electric service therein but that said negotiations had been ineffective. The complaint then describes nine tracts within the annexed territories in which REC has facilities which City wishes to purchase and alleges that City seeks to condemn property owned by REC in said tracts within the annexed territories. Finally, there are listed specific items of property of REC believed by City to be located within the nine described tracts.

REC does not argue that the legal descriptions of the annexed territories are insufficient. However, it urges that the nine tracts located within the annexed areas are not sufficiently described to enable REC to identify what property might be appropriated. In support of this contention, REC relies upon testimony of its witness Carl Heim, a land surveyor, the thrust of which is said to be that it is not possible to plat certain of the nine tracts without guess or speculation. REC asserts that accuracy of description of the nine tracts is essential for the reason that they would comprise the territorial boundaries between REC and City and identify the areas each would serve. REC's argument is, of course, predicated on the assumption that City intends to serve only the nine tracts of land described within the annexed area.

In response, City argues that by its complaint it seeks to condemn all of REC's property within the annexed territories. It is urged that the descriptions of the nine tracts attacked as being defective are significant only to point out

the general location of REC's existing facilities within the annexed territories.

The sufficiency of a complaint in condemnation brought pursuant to Section 18A was questioned in *City of Greenfield v. Hancock County REMC* (1974), 160 Ind. App. 529, 312 N.E.2d 867. The principles applicable in testing the sufficiency of the description were summarized as follows:

> ". . . In Indiana, it is well established that the description used in eminent domain proceedings must be sufficient to furnish the means by which the property sought to be appropriated may be identified with certainty, but it is not necessary that the description itself fully identify it. *Hagemann v. City of Mount Vernon* (1958), 238 Ind. 613, 154 N.E.2d 33; *Darrow v. Chicago, etc., R. Co.* (1907), 169 Ind. 99, 81 N.E. 1081.
>
> \* \* \*
>
> ". . . [I]n construing the sufficiency of a complaint in eminent domain, the averments of the entire complaint rather than those of a single grammatical paragraph control. *Guerrettaz v. Public Service Co. of Indiana* (1949), 227 Ind. 556, 87 N.E.2d 721."

The legal descriptions of the relevant annexed parcels in the *Greenfield* complaint were followed by the allegation that each parcel of the annexed territories included territory in which the city was not authorized to serve but in which REMC was authorized to serve. In rejecting REMC's assertion that lack of specificity in this allegation rendered the complaint insufficient, the court wrote:

> "Here the paragraph in question is preceded by the legal description of the annexed areas and is followed by the allegation that the City proposes to serve the *entire* annexed area and it is necessary for the City to acquire the property owned by REMC therein which is used and useful in or in connection with rendering such service. Thus, the allegation basically follows the language of § 18A, which itself specifies what the City must condemn." (Footnote omitted.)

Likewise, when construed in its entirety and in light of § 18A, we conclude that the complaint in the case at bar suffi-

ciently describes the property sought to be condemned. That City intends to serve the entire annexed area is reflected by its general allegation that it has attempted to negotiate with REC for the purchase of property owned by REC within the annexed areas and used and useful in the rendering of electric service within the incorporated areas. This general allegation, when coupled with the allegation that REC was rendering electric service in *portions* of the annexed territories, supports City's contention that the nine allegedly erroneously described tracts are relevant only to point out the general locations in which REC has property or facilities located within the annexed territories.

## II.

REC next maintains that City is barred from exercising its right of eminent domain by virtue of a prior agreement between the parties fixing boundary lines determining the areas in which each would provide electrical service.

This agreement, entered March 15, 1949, provided in part:

"Whereas, the said parties hereto have heretofore expressed their willingness and desire to establish a franchise area about the City of Jasper, in order that a definite boundary may be established for the distribution of electric energy to residents of the territory adjacent to and about the City of Jasper.

\* \* \*

"1. That for the purpose of mutually establishing a franchise area about the City of Jasper, for the service of electric energy to residents of the territory in and about the City of Jasper, said parties have agreed to the following boundary in Bainbridge Township, Dubois County, Indiana, to-wit:

\* \* \*

"3. For the consideration heretofore stated and given, it is agreed between the parties that this contract may be amended, changed or altered by mutual agreement of both parties hereto, without the intervention of any outside regulatory bodies."

The contract was modified in 1960 to effectuate a settlement between the parties of a condemnation proceeding brought by City. This agreement modifying the earlier contract contains the following provision:

> "Other than as herein cancelled, and/or modified, said franchise agreement shall continue and be and remain effective in accordance with these terms, as to all areas other than the annexed area as to which it is hereby canceled."

REC relies on the decision *Southern Indiana Gas & Electric Co.* v. *City of Boonville* (1969), 252 Ind. 385, 248 N.E.2d 343. At the time of the litigation therein, Boonville was purchasing electrical energy from Southern. There had been in existence for a number of years a contract under which electricity was supplied to Boonville by Southern. As a part of that contract, Boonville had agreed not to extend its electrical services beyond its then city limits. The contract, and subsequent renewals, had been approved by the Public Service Commission. In holding that the contract prevented Boonville from condemning Southern's property in subsequently annexed areas the court wrote:

> ". . . The City of Boonville operates the utility in a proprietary and private capacity and not as a part of its sovereign rights.

> "The delegation of the powers of eminent domain for the operation of a utility is for business purposes, as distinguished from a governmental or a sovereign purpose. The exercise by a municipality of its eminent domain powers in connection with its utility operations therefore involved a proprietary or a businesslike decision. It is simply a business operation. In *The City of Vincennes* v. *The Citizens' Gas Light Company* (1892), 132 Ind. 114, 126, 31 N.E. 573, it is said:

>> 'There is a distinction between powers of a legislative character and powers of a business nature. The power to execute a contract for goods, for houses, for gas, for water and the like, is neither a judicial nor a legislative power, but is a purely business power. . . .'

> \* \* \*

> "It follows that a utility, including one operated by the city, may make a contract which prevents it from thereafter

taking property by use of its power of eminent domain. It has not lost the right to exercise the power of eminent domain, but has made a contract which prevents it from succeeding in such a case if it should bring an action of eminent domain. . . . In this case the Court has issued a temporary injunction which stamps with approval the contract between the parties as binding. At the same time it interpreted the injunction as not prohibiting the bringing of the condemnation action, but it did not state that the appellee-city was entitled to succeed in such proceeding.

"In this case the City of Boonville, as part of its contract with the appellant, entered into an agreement for the furnishing of electrical energey [sic] for the operation of its utility, and at the same time agreed upon drawing a line between the territory to be served by the appellant and the city. We know of no public policy that prevents such an agreement. In fact, efficiency and economy would favor such agreements as avoiding duplication of equipment, etc."

Relying upon *City of Greenfield* v. *Hancock County REMC, supra,* City argues that the *Boonville* decision is distinguishable from the case at bar.

In *Greenfield,* the court considered the question of whether a deed and bill of sale given by the city to REMC nearly 25 years prior to commencement of the condemnation action prevented the city from exercising its right of eminent domain over the areas described therein. Prior to 1946, the city had provided electric service to areas outside its corporate limits. Desiring to consolidate its service within the corporate limits, the city offered to REMC the entire rural area being served. The transfer of the city's property and interest in its service outside of the corporate limits was subsequently effectuated by the deed and bill of sale there in question. In refusing to hold that the deed and bill of sale barred the city's condemnation action, the court distinguished *Boonville* as follows:

"The deed and bill of sale before us does not bring REMC within the Boonville doctrine.

"First of all, there is no express covenant or agreement against future expansion, reacquisition or competition contained in the deed.

\* \* \*

"Accordingly, even in the exercise of one of its proprietary functions, government will not be said to have contractually waived its right unless the contractual language clearly evinces that intent. No such language appears in the deed and bill of sale.

"There is, in addition, another distinction between the present circumstance and that in Boonville which buttresses our analysis of the document here in question.

"The Boonville court said of the city:

'It has not lost the right to exercise the power of eminent domain, but has made a contract which prevents it from succeeding in such a case if it should bring an action of eminent domain.' 252 Ind. 385, 390, 248 N.E.2d 343, 345.

"Thus, the essence of *Boonville* is the contractual restraint against competition, albeit within the framework of the public utility laws, contained in a current agreement for services with a stated expiration date.

"When that is contrasted with a single sale made more than 25 years prior to the commencement of this proceeding, accompanied by the contention that the City should be bound in perpetuity from extending its service, the public policy confining such restraints to standards of reasonableness is brought to bear.

"While public policy regarding utility service favors a general restraint on competition for the benefit of consumers through the public service commission laws, in Section 18a the legislature determined that public interest is best served if the electric utility authorized to serve a city or town be permitted (upon payment of proper compensation) to serve additional areas incorporated into and becoming a part of the city or town. We are not here called upon to define the perimeters for a contractual limitation of that expressed policy, except to observe that the asserted agreement in perpetuity before us would be contrary to the public welfare as therein expressed." 312 N.E.2d at 877.

We likewise conclude that the *Boonville* decision is distinguishable. No language in the agreement in the case at bar evinces a clear intent that the City waive its right of future acquisition through exercise of its power of eminent domain. Further, to the extent that the agreement fails to contain a stated expiration date and could therefore be construed to

limit expansion by the city in perpetuity, the public interest reflected by Section 18A is contravened.

We therefore hold that the agreement entered into by City and REC March 15, 1949, and modified January 14, 1960, does not bar City's action in condemnation.

## III.

REC next argues that City's right to condemn the property in question should be deemed to have lapsed due to failure to timely exercise such right. Also, it is urged that City should be estopped from exercising such right due to its acceptance of the benefits of the prior agreement between the parties for twenty years.

Dispositive of the first contention is *Decatur County REMC* v. *Public Service Co.* (1974), 159 Ind. App. 346, 307 N.E.2d 96, wherein Judge Lowdermilk stated:

"As to Issue Two, REMC contends that PSCI's right to condemn the property annexed by the city of Greensburg lapsed by reason of the fact that the first portion of the annexed property had been annexed for eleven years and the last portion of the annexed property was annexed for one year prior to the filing of the action to condemn. REMC contends that eleven years is more than a sufficient length of time to commence condemnation proceedings and the failure of PSCI to start proceedings creates laches, as the right to condemn lapses.

\* \* \*

"Counsel for the respective parties have failed to furnish this court with any case law, and we have been unable to discover any case law, which holds that a grant of the power of eminent domain can lapse for nonuser. A careful reading of § 18a leads us to the conclusion, when applying the law to the facts in the case at bar, that the utility (PSCI) can in no event commence condemnation proceedings to take over the electric utility (REMC) serving the annexed area until after the lapse of a minimum of 90 days after such annexation takes place. Until and unless the franchised utility (PSCI) effects a purchase or condemnation, the other utility (REMC) has the authority to continue its op-

eration within the portion of the area annexed by the city of Greensburg in which REMC was lawfully rendering electric utility service immediately prior to such annexation.

"Section 18a makes no mention of a lapse of the power of condemnation by the franchised utility's failure to negotiate for purchase or to bring its action to condemn the utility property in the annexed area. Thus, it is self evident that the Legislature specifically established a minimum time before which the power of condemnation could be invoked, but made no determination that said power must be exercised within a specific time after the minimum time."

We also fail to find merit in REC's assertion of estoppel based on City's alleged acceptance of the benefits of the parties' agreement. As City points out, REC derived revenues for a number of years in rendering electrical service in annexed areas pursuant to the agreement. Further, REC will be compensated for the property taken.

## IV.

Finally, REC questions whether City made a good faith offer to purchase the property prior to filing the complaint in condemnation.

The evidence most favorable to appellee reveals that City attempted to initiate negotiation with REC on several occasions but that REC failed to respond. On one occasion, an agent of REC responded to City's offer to initiate negotiations by stating that REC was making a survey and engineering studies to develop a fair price for the properties involved and that REC would contact City upon completion. However, REC's agent admitted at trial that no such survey or study was undertaken. Further, REC failed to produce an inventory as requested by City.

REC should not be able to assert failure to make a good faith offer to purchase in light of evidence of its refusal to enter into negotiations with City. See, *City of Greenfield* v. *Hancock County REMC, supra.*

## CONCLUSION

REC having failed to demonstrate reversible error, the order of the trial court overruling its objections to City's complaint in condemnation must be and is hereby affirmed.

Affirmed.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 348 N.E.2d 663.